Rex Lamont Butler
Rex Lamont Butler and Associates Inc., P.C.
745 W. 4th Avenue, Suite 300
Anchorage, AK 99501
Tel: (907)272-1497
Fax: (907)276-3306
Email: rexbutlercalendar@gmail.com
**Attorney for Plaintiffs** Estate of Bishar Ali Hassan,
Ahmed Hassan and Bilay Aden Idiris

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| THE ESTATE OF BISHAR ALI HASSAN, | ) |
| | ) |
| AHMED HASSAN AND BILAY ADEN IDIRIS, | ) |
| | ) |
| PLAINTIFFS, | ) |
| Vs. | ) |
| | ) |
| MUNICIPALITY AND CITY OF ANCHORAGE, | ) |
| | ) |
| MATTHEW HALL, NATHAN LEWIS, BRETT | ) |
| | ) |
| EGGIMAN, AND DOES 1-20, INCLUSIVE, | ) |
| | ) |
| DEFENDANTS. | ) Case No. 3:21-cv- |
| _____ | ) |

## <u>COMPLAINT FOR DAMAGES BASED ON VIOLATION OF CIVIL RIGHTS</u>

**(42 U.S.C. 1983, and the 4th, 5th & 14th Amendments of the Federal Constitution)**

1. Plaintiffs, the estate of Bishar Ali Hassan (DECEDENT), by and through Ahmed

Hassan as Special Administrator and as an individual, and Bilay Aden Idiris, for their

complaint against Defendants, MUNICIPALITY OF ANCHORAGE, ANCHOPRAGE POLICE DEPARTMENT, MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN, and DOES 1-20, inclusive, and **request for a jury trial**, allege as follows:

## INTRODUCTION

2.  This civil rights action seeks compensatory and punitive damages from Defendants for violating DECEDENT's various rights under the United States Constitution and state law because of the Anchorage Police Department's **Custom and Policy** made Defendants deliberately indifferent to DECEDENT's rights and thus resulted in the fatal police shooting of the DECEDENT.

## JURISDICTION AND VENUE

3. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the Municipality and City of Anchorage, Alaska.

## PARTIES

5.  At all relevant times, Bishar Ali Hassan ("DECEDENT") was an individual residing in the Municipality of Anchorage, Alaska.

6. Plaintiff Ahmed Hassan is an individual residing in the Municipality and City of Anchorage, Alaska, and is the natural sibling to DECEDENT, Bishar Ali Hassan. Ahmed Hassan sues both in his individual capacity as a sibling of DECEDENT, Bishar Ali Hassan and in a representative capacity as an Administrator of DECEDENT's estate. Ahmed Hassan seeks both survival and wrongful death damages under federal and state law.

7. Plaintiff Bilay Aden Idiris is an individual residing in the Municipality and City of Anchorage, Alaska and is the natural mother of DECEDENT. Bilay Aden Idiris sues in her individual capacity as the natural mother of DECEDENT. Bilay Aden Idiris seeks both survival and wrongful death damages under federal and state law.

8. At all relevant times, Defendant, MUNICIPALITY AND THE CITY OF ANCHORAGE (CITY) is and was a duly organized public entity, existing under the laws of the State of Alaska. At all relevant times, CITY was the employer of Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-4, who were CITY police officers, DOES 5-10, who were CITY police officers' supervisorial officers, and DOES 11-20, who were managerial, supervisorial, and policymaking employees of the CITY Police Department. On information and belief, at all relevant times, MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOE 1-20 were residents of the Municipality and City of Anchorage, Alaska. MATTHEW HALL, NATHAN LEWIS AND BRETT EGGIMAN and DOES 1-20 are sued in their individual capacity for damages and attorney fees and costs.

9. At all relevant times, Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-20 were duly authorized employees and agents of CITY, who were acting under color of law within the course and scope of their respective duties as police officers exercising custom and policy, with the complete authority and ratification of their principal Defendant, CITY.

10. At all relevant times, Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-20 were duly appointed officers and/or employees or agents of CITY, subject to oversight and supervision by CITY's elected and nonelected officials.

11. In doing the acts and failing and omitting to act as hereinafter described, Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-20 were acting on the implied and actual permission and consent, and custom and/or policy of CITY.

12. At all times mentioned herein, each and every defendant was the agent of CITY and CITY had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant.

13. The true names of defendants DOES 1 through 20, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacities of the defendants when they are ascertained. Each of the fictitious named defendants is responsible in some manner or form for the conduct and liabilities alleged herein.

14. On March 29th, 2021, Plaintiffs served their claims for damages with CITY pursuant to applicable sections of the Alaska State Statute.

15. CITY is yet to respond to Plaintiffs' claims for damages.

16. By the time of filing this Complaint, CITY issued its findings clearing MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN of any wrongdoing and by so doing, CITY has ratified their use of deadly force against DECEDENT. However, plaintiffs have yet to receive a report of the official findings. Accordingly, Plaintiffs reserve the right to amend this Complaint once the CITY has issued its findings as to the involved officers' use of deadly force.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

17. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 16 of this Complaint with the same force and effect as if fully set forth herein.

18. On or about April 1st, 2019, DECEDENT was walking at or near the parking lot of Walmart Store in Mid town, Anchorage, Alaska before taking a bus to the intersection of A street and 16th Avenue, in Anchorage, Alaska.

19. On or about April 1st, 2019, several calls were placed to 911 reporting that a black male adult (BMA):

(i)  pulled a handgun out of his jacket walking west bound,

(ii) pulled a gun from his pocket and was pointing it down,

(iii) is carrying a black handgun,

(iv) was waving a black handgun,

(v) was brandishing a handgun,

(vi) was on A street waving a gun on the sidewalk not pointing it at anything and keeps putting it back in his pocket and he was at the bus stop across from the Tessoro,

(vii) tucked the gun into the front right pants of front right jacket,

(viii) with a handgun got on bus #25 headed northbound on A street and never saw him fire the weapon, never heard any gunshots or interact with anyone.

(*See plaintiff's exhibit A, CAD report*).

20.     APD Officers MATTHEW HALL, NATHAN LEWISs and BRETT EGGIMAN had this information communicated to them by dispatch before they stopped and shot DECEDENT.

21. While responding to reports of a man walking around waving a gun in the Walmart Parking lot, Officer Matthew HALL (Officer Hall), looked for a man in a black coat and white pants waving a gun or people running away from the man but did not see either. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 3 of 10 to 4 of 10*).

22. Based on the new information from dispatch, Officer HALL moved to the Tessoro Gas Station (Tessoro) on A street and Northern Lights and again looked for people running or somebody waving a gun. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 4 of 10*).

23. Officer HALL was not flagged down by anybody while looking for DECEDENT. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 4 of 10*).

24. Officer HALL did not see any distraught person or people while looking for DECEDENT. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 4 of 10*).

25. While at or near the Tessoro, Officer HALL learned that the man (DECEDENT)he was looking for hopped onto a bus that was north bound on A street. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 4 of 10*).

26. Officer HALL radioed dispatch to see if they could call People Mover to determine the whereabout of the bus. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 4 of 10*).

27. Officer HALL drove northbound on A street to track down the bus. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 4 of 10*).

28. While driving on A street at the hill after Fireweed street, Officer HALL saw a bus that had just pulled over at a bus stop getting onto the road at A street and 16th Avenue. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 4 of 10*).

29. Officer HALL saw the "suspect" (DECEDENT) while he was "still a pretty good distance away". (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 4 of 10*).

30. Officer HALL drove his police car onto the sidewalk where DECEDENT was walking alone northbound towards downtown. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 5 of 10*).

31. Officer HALL was aware that there was another police car following him and that another police car drove to his left on A street over the shoulder of the road. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 5 of 10*).

32. DECEDENT continued walking on his way, northbound even as Officer HALL'S was driving his police car on the sidewalk closing in on him. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 5 of 10 and Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

33. Officer HALL knew or should have known that based on the information he had received, there was no evidence to suggest that the DECEDENT had committed a crime, was about to commit a crime or had threatened anyone. (*See plaintiff's exhibit A, CAD report*).

34. In line with APD custom and policy, Officer HALL activated his overhead police lights and siren to get DECEDENT'S attention. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 5 of 10 and Plaintiff's exhibit*

*D, video recording from Officer Nathan Lewis's dash camera*). **Officer Hall acted with deliberate indifference to DECEDENT's constitution right to be free from unreasonable searches and seizure**.

35. DECEDENT walked towards Officer HALL'S police car after Officer HALL activated flashing overhead lights and a siren on his police car. (*See Plaintiff's exhibit D, video recording from Officer Nathan Lewis's dash camera*).

36. DECEDENT submitted to Officer HALL'S show of authority exhibited by driving the police car towards DECEDENT on the sidewalk and activating flashing police lights and siren. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 5 of 10 and Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

37. Officer HALL stepped out of his police car, placed his hand on his gun and ordered the DECEDENT to stop. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

38. DECEDENT stopped as he was ordered to by Officer HALL. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

39. As required by Alaska law[1], DECEDENT informed Officer Hall that he had a gun that is not a real but a toy. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

---

[1] See *AS 11.61.220 misconduct involving weapons in fifth degree*

40. DECEDENT spoke audibly that he could be heard. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

41. Officer HALL'S recorder captured DECEDENT informing Officer HALL that he had a gun that was not real. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

42. Officer HALL heard or should have heard DECEDENT say that he had a gun that was not real but a toy. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

43. DECEDENT informed Officer HALL that he had a gun that was not real but a toy before the first shot was fired. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

44. DECEDENT did not point the toy gun at any of the officers before he was shot. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

45. The DECEDENT was struck by the first bullet. (See *Plaintiff's exhibit E, video recording from Officer Eggiman's dash camera*).

46. Officer HALL knew that DECEDENT had been struck by his shot. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 6 of 10*).

47. Officer Hall could tell that he was hitting the DECENDENT because "I saw the reaction from him" and "just with my aiming and where the rounds were going, I knew I

was getting hits on him." (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 6 of 10*).

48. DECEDENT dropped the toy gun when he was struck by the first bullet. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

49. DECEDENT keeled over and fell to the ground after he was struck by the first bullet. (See *Plaintiff's exhibit D, video recording from Officer Nathan Lewis's dash camera*).

50. Officers HALL, LEWIS, and EGGIMAN knew or should have known that DECEDENT dropped the toy gun. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

51. Officer HALL shot at least six to seven more bullets into DECEDENT despite knowing that the first bullet struck DECEDENT causing him to drop the fake gun. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 6 of 10 and Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

52. Officers HALL, LEWIS and EGGIMAN continued shooting the DECEDENT even after it was obvious or after it should have been obvious to them that DECEDENT had dropped the fake gun and fallen to the ground. (See *Plaintiff's exhibit E, video recording from Officer Eggiman's dash camera*).

53. Officer HALL knew that the fake gun was out of the DECEDENT'S hands and DECEDENT'S arm reach. (*See Plaintiff's exhibit B, Officer Hall's interview with detectives J, Foraker and J. Bell, page 6 of 10*).

54. Officers HALL, LEWIS and EGGIMAN, knew or should have known that DECEDENT did not pose a danger but continued to shoot DECEDENT several times. (See *Plaintiff's exhibit E, video recording from Officer Eggiman's dash camera*).

55. Officers HALL, LEWIS AND EGGIMAN ordered the DECENDENT to put his hands up even though they had shot DECEDENT multiple times and severely injured him. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

56. Officers HALL, LEWIS and EGGIMAN shot DECEDENT multiple times including while he was falling down. (*See plaintiff's exhibit F, the autopsy report*)

57. Officers HALL, LEWIS and EGGIMAN did not give DECEDENT a verbal warning that deadly force would be used prior to shooting DECEDENT multiple times despite it being feasible to do. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

58. Officers HALL, LEWIS and EGGIMAN did not issue appropriate commands to DECEDENT before or even after shooting him multiple times. (See *Plaintiff's exhibit C, video recording from Officer Hall's dash camera*).

59. DECEDENT neither threatened anyone nor committed a crime prior to being fatally shot by Officers HALL, LEWIS and EGGIMAN. (*See plaintiff's exhibit A, CAD report and plaintiff's exhibit C, video recording from Officer Hall's dashcam*)

60. Officers HALL, LEWIS and EGGIMAN continued to shoot DECEDENT even though he did not present an immediate threat of death or serious bodily injury to the

officers or anyone else and there was other less than lethal options available. (See *Plaintiff's exhibit C, video recording from Officer Hall's dashcam*).

61. Officers HALL, LEWIS and EGGIMAN did not show a reverence for human life because they continued to fire multiple shots at DECEDENT who had been shot and severely injured. (See *Plaintiff's exhibit C, video recording from Officer Hall's dashcam*).

62. Officers HALL, LEWIS and EGGIMAN are responsible for every single shot they fired, and this was not an immediate defense of a life situation.

63. On information and belief, Defendants HALL, LEWIS and EGGIMAN had no information that DECEDENT had committed a felony. (*See plaintiff's exhibit A, dispatch log, and Exhibit B the officers' statements made during interview with detectives J. Foraker and J. Bell which establish that there was no evidence of a crime by decedent*)

## FIRST CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. §1983)**

(BY PLAINTIFFS AHMED HASSAN AS SPECIAL REPRESENTATIVE AND IN HIS INDIVIDUAL CAPACITY, AND BILAY ADEN IDIRIS AGAINST DEFENDANTS MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN AND DOES 1-4)

64. Plaintiff repeats and realleges each and every allegation in paragraph 1 through 63 of this Complaint with the same force and effect as if fully set forth herein.

65. Defendants MATTHEW HALL, NATHAN LEWIS, RETT EGGIMAN and DOES 1-4 caused DECEDENT to be detained and arrested DECEDENT in violation of his right to be secure in his person against unreasonable searches and seizures as guaranteed

to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment. In detaining and arresting DECEDENT, the defendants, MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-4 exercised the Municipal custom and policy of arresting suspects without reasonable suspicion or probable cause.

66. As a result of the conduct of MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-4, they are liable for DECEDENT'S injuries because they were integral participants to the violations of DECEDENT'S rights.

67. The DECEDENT was detained without reasonable suspicion and arrested without probable cause by MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN.

68. The conduct of MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-4 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES1-4.

69. Accordingly, Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-4, are each liable to Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. §1983.

70. Plaintiffs also seek attorney fees under this claim.

## SECOND CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

(BY PLAINTIFF AHMED HASSAN AS SPECIAL REPRESENTATIVE AND IN HIS INDIVIDUAL CAPACITY, AND BILAY ADEN IDIRIS AGAINST DEFENDANTS MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN AND DOES 1-4)

71. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 70 of this Complaint with the same force and effect as if fully set forth herein.

72. MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN's unjustified stopping by show of authority and subsequent unjustified shooting deprived DECEDENT of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

73. The unreasonable use of force by Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN deprived the DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

74. As a result, DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life and eventually suffered a loss of life and of earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort,

support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

75. As a result of the conduct of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, they are liable for DECEDENT's injuries because they were integral participants in the use of excessive force.

76. The use of deadly force was excessive because this was not an immediate defense of a life situation, the involved officers did not give a verbal warning that deadly force would be used despite it being feasible to do so, there were no commands given and there were other reasonable options available other than shooting and killing DECEDENT.

77. This use of deadly force was excessive and unreasonable under the circumstances, especially since DECEDENT was forced on to the ground by the first shot that caused him to drop the toy gun to a place not within the reach of his hands. The involved officers also fired multiple shots striking DECEDENT more than a dozen times. Defendants' actions thus deprived DECEDENT of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

78. The conduct of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive

damages as to Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN.

79. Plaintiffs bring this claim as successors-in-interest to the DECEDENT and seek both survival and wrongful death damages for the violation of DECEDENT's rights.

80. Plaintiffs also seek attorney fees under this claim.

### THIRD CLAIM FOR RELIEF

**Substantive Due Process (42 U.S.C. § 1983)**

(BY PLAITIFFS AHMED HASSAN AS SPECIAL REPRESENTATIVE AND IN HIS INDIVIDUAL CAPACITY, AND BILAY ADEN IDIRIS AGAINST DEFENDANTS MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN AND DOES 1-4)

81. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 80 of this Complaint with the same force and effect as is fully set forth herein.

82. AHMED HASSAN had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with his brother, the DECEDENT.

83. BILAY ADEN IDIRIS had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience,

Case 3:21-cv-00076-JWS   Document 1   Filed 03/30/21   Page 17 of 39

including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her son, DECEDENT.

84. As a result of the excessive force by MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, DECEDENT died. Plaintiffs AHMED HASSAN and BILAY ADEN IDIRIS were thereby deprived of their constitutional right of familial relationship with DECEDENT.

85. MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, acting under color of State law, thus violated the Fourteenth Amendment rights of AHMED HASSAN and BILAY ADEN IDIRIS to be free from unwarranted interference with their familial relationship with DECEDENT.

86. The aforementioned actions of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs AHMED HASSAN and BILAY ADEN IDIRIS with purpose to harm unrelated to any constitutional law enforcement objective.

87. Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, acting under color of State and Municipal law, thus violated the Fourteenth Amendment rights of DECEDENT and Plaintiffs.

88. As a direct and proximate cause of the acts of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the

life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

89. As a result of the conduct of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, they are liable for DECEDENT'S injuries because they were integral participants in the denial of due process.

90. The conduct of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN.

91. Plaintiffs bring this claim individually and seek wrongful death damages for the violation of Plaintiffs' rights.

92. Plaintiffs also seek attorney fees under this claim.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(BY PLAINITFFS AHMED HASSAN AS SPECIAL REPRESENTATIVE AND IN HIS INDIVIDUAL CAPACITY, AND BILAY ADEN IDIRIS AGAINST DEFENDANTS THE CITY AND DOES 5-20)

93. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 92 of this Complaint with the same force and effect as if fully set forth herein.

Estate of Bishar Ali Hassan v. Municipality of Anchorage et al, 3:21-cv-                     Complaint      19

94. On and for some time prior to April 1, 2019 (and continuing to the present date) Defendants DOES 5-10, deprived Plaintiffs and DECEDENT of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and DECEDENT, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a) Employing and retaining as police officers and other personnel, including MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, whom Defendants DOES 5-20, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY Police Department policies;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining CITY Police Officers, and other personnel, who Defendant CITY knew or in the exercise of reasonable care should have known and the aforementioned propensities and character traits;

(c) By failing to adequately train officers, including MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, and failing to institute appropriate policies, regarding the use of excessive force, including deadly force;

(e) By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of DOES 5-20 and CITY, were done with a deliberate indifference to individuals' safety and rights; and

(f) Of totally inadequately training CITY Police Officers, MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, with respect to continuing to shoot injured individuals, including, but not limited to, individuals exercising their constitutional right.

95. By reason of the aforementioned policies and practices of Defendants DOES 5-20, DECEDENT was severely injured and subjected to pain and suffering and lost his life.

96. Defendants DOES 5-20, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

97. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants DOES 5-20, acted with an intentional, reckless, and callous disregard for the life of DECEDENT, and DECEDENT's and Plaintiffs' constitutional rights. Defendants DOES 5-20, each of their actions were willful, wanton,

oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

98. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants DOES 5-20, were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

99. By reason of the aforementioned acts and omissions of Defendants DOES 5-20, Plaintiffs were caused to incur medical expenses, incur funeral and related burial expenses, and loss of financial support.

100. By reason of the aforementioned acts and omissions of Defendants DOES 5-20, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support.

101. Accordingly, Defendants DOES 5-20, each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

102. Plaintiffs seek wrongful death and survival damages under this claim.

103. Plaintiffs also seek attorney fees under this claim.

## FIFTH CLAIM FOR RELIEF

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(BY PLAINTIFFS AHMED HASSAN AS SPECIAL REPRESENTATIVE AND IN HIS INDIVIDUAL CAPACITY, AND BILAY ADEN IDIRIS AGAINST DEFENDANTS CITY AND DOES 5-20)

104. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 103 of this Complaint with the same force and effect as if fully set forth herein.

105. While acting under the color of state law and within the course and scope of their employment as police officers for the CITY police department, MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN 's shooting of DECEDENT, following a stop not supported by reasonable suspicion, and seizure not supported by probable cause, deprived DECEDENT of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including his right to be free from unreasonable search and seizure.

106. The training policies of the defendant CITY police department were not adequate to train its police officers, including but not limited to, MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, with regards to when there is no reasonable suspicion to stop a citizen, probable cause to detain a citizen and use of deadly force. As a result, CITY police officers, including MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, are not able to handle the usual and recurring situations with which they must deal, including police stops not supported by reasonable suspicion and seizures not supported by probable cause. These inadequate training policies existed prior to the date of this incident and continue to this day.

107. The Defendant CITY police department was deliberately indifferent to the known or obvious consequences of its failure to train its police officers, including MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, adequately with regards

to when there is reasonable suspicion necessary to stop a citizen, probable cause to detain a citizen and using deadly force. This inadequate training includes failing to teach officers when they have the authority to stop, detain or seize citizens without violating citizens' constitutional rights, prior to using deadly force, and to use less than lethal options, prior to resorting to the use of deadly force.

108. CITY was aware that failure to implement some sort of training with regards to their officers' use of deadly force and dealing with citizens who are not suspected of committing a crime, including citizens exercising their constitutional right to bare arms, would result in continuing to have numerous unreasonable officers involved unconstitutional seizures, searches and unconstitutional and unjustified shootings of citizens.

109. The failure of the Defendant CITY police department to provide adequate training with regards to using deadly force, caused the deprivation of the Plaintiff's rights by MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN. In other words, the Defendant's failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

110. By failing to provide adequate training to CITY's police officers, including MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, Defendants DOES 5-10, acted with an intentional, reckless, and callous disregard for the life of DECEDENT, and DECEDENT's and Plaintiffs' constitutional rights. Defendants DOES 5-20, each of their

actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

111. By reason of the aforementioned acts and omissions of Defendants DOES 5-20, Plaintiffs were caused to incur medical expenses, incur funeral and related burial expenses, and loss of financial support.

112. By reason of the aforementioned acts and omissions of Defendants DOES 5-20, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support.

113. Accordingly, Defendants DOES 5-20, each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

114. Plaintiffs seek wrongful death and survival damages under this claim.

115. Plaintiffs also seek attorney fees under this claim.

## SIXTH CLAIM FOR RELIEF

**False Arrest/False Imprisonment (Under Alaska Law)**

A restraint upon the plaintiff's freedom without proper legal authority.[2]

(BY PLAITIFFS AHMED HASSAN AS SPECIAL REPRESENTATIVE AND IN HIS INDIVIDUAL CAPACITY, AND BILAY ADEN IDIRIS AGAINST DEFENDANTS MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN AND DOES 1-4)

---

[2] Hazen v. Municipality of Anchorage, 718 P.2d 456, 461 (Alaska 1986).

116. Plaintiffs repeat and reallege each and every allegation in paragraphs 1through 115 of this Complaint with the same force and effect as if fully set forth herein.

117. Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, while working as police officers for CITY, and acting within the course and scope of their duties, intentionally deprived DECEDENT of his freedom of movement by use of force, threats of force and unreasonable duress when Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN shot DECEDENT multiple times and killed him. Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN intentionally shot DECEDENT in order to detain him. Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN also detained DECEDENT without reasonable suspicion. There was an attempt by MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN to arrest DECEDENT without probable cause.

118. DECEDENT did not knowingly or voluntarily consent to his detention or attempted arrest. On information and belief DECEDENT did not feel that he was free to leave as he lay dying on the ground. By shooting and killing DECEDENT, Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, deprived DECEDENT, who was exercising his constitutional right of liberty without justification. Further, Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN did not have probable cause to believe that DECEDENT, specifically, had committed any crime.

119. The conduct against DECEDENT by Defendants MATTHEW HALL, NATHAN LEWIS AND BRETT EGGIMAN, by shooting multiple shots at DECEDENT, was a substantial factor in causing the harm to DECEDENT, namely his death.

120. CITY is vicariously liable for the wrongful acts of Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN. Alaska follows the Restatement (Second) of Agency's provision regarding scope of employment, found in Section 228, which provides as follows:

(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.[3]

121. The conduct of Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT, entitling Plaintiffs to an award of exemplary and punitive damages.

122. Plaintiffs are seeking survival and wrongful death damages under this claim.

123. Plaintiff also seeks attorney fees under this claim.

---

[3] Taranto v. North Slope Burough,  909 P.2d 354, 358 (Alaska 1996) (quoting Restatement (Second) of Agency § 228). In determining whether an employee acted within the scope of employment, these Restatement factors are relevant considerations, although not prerequisites, to determine whether an employer should be held responsible for an employee's acts. *Laidlaw Transit, Inc. v. Crouse ex rel. Crouse*, 53 P.3d 1093, 1098-99 (Alaska 2002).

Estate of Bishar Ali Hassan v. Municipality of Anchorage et al, 3:21-cv-                Complaint      27

## SEVENTH CLAIM FOR RELIEF

**Battery (Alaska law)**

(Wrongful Death)

(BY PLAITIFFS AHMED HASSAN AS SPECIAL REPRESENTATIVE AND IN HIS INDIVIDUAL CAPACITY, AND BILAY ADEN IDIRIS AGAINST DEFENDANTS MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN AND DOES 1-4)

124. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 123 of this Complaint with the same force and effect as if fully set forth herein.

125. MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, while working as police officers for the CITY Police Department and acting within the course and scope of their duties, intentionally shot DECEDENT multiple times, including while DECEDENT was falling to the ground and after DECEDENT had already fallen to the ground, striking DECEDENT at least a dozen (12) or more times. Further, DEFEDANTS had no constitutional right to stop, attempt to detain or detain DECENDENT before they shot him multiple times. The use of deadly force was also unreasonable because there were clearly less lethal options available. As a result of the actions of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, DECEDENT suffered severe mental and physical pain and suffering, loss of enjoyment of life and ultimately died from his injuries and lost earning capacity. MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN had no legal justification for using force against DECEDENT and said Defendants' use of force while carrying out their officer duties was unreasonable, especially since there was

no reasonable suspicion or probable cause that DECEDENT had committed a crime. As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

126. CITY is vicariously liable for the wrongful acts of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN pursuant to the Restatement (Second) of Agency's provision regarding scope of employment, found in Section 228, followed by Alaska, which provides as follows:

(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.[4]

127. The conduct of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN was malicious, wanton, oppressive, and accomplished with a conscious

---

[4] See Taranto v. North Slope Burough, 909 P.2d 354, 358 (Alaska 1996) (quoting Restatement (Second) of Agency § 228).

Estate of Bishar Ali Hassan v. Municipality of Anchorage et al, 3:21-cv-       Complaint   29

disregard for the rights of Plaintiffs and DECEDENT, entitling Plaintiffs, individually and as successors-in-interest to DECEDENT, to an award of exemplary and punitive damages.

128. Plaintiffs bring this claim both individually and as successors-in interest to DECEDENT and seek both survival and wrongful death damages.

129. Plaintiff also seek attorney fees under this claim.

<u>**EIGHTH CLAIM FOR RELIEF**</u>

**Negligence (Alaska Law)**

(Wrongful Death)

(BY PLAINTIFFS AHMED HASSAN AS SPECIAL REPRESENTATIVE AND IN HIS INDIVIDUAL CAPACITY, AND BILAY ADEN IDIRIS AGAINST DEFENDANTS MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, CITY AND DOES 5-20)

130. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 129 of this Complaint with the same force and effect as if fully set forth herein.

131. The actions and inactions of the Defendants were negligent, including but not limited to:

(a) the failure to properly and adequately train employees, including MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, with regards to the use of force, including deadly force;

(b) the failure to properly and adequately assess the need to detain, arrest, and use force, including deadly force against DECEDENT;

(c) the negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence;

(d) the negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

(e) failure to train with regards to when there is reasonable suspicion to make a stop;

(f) failure to train with regards to when there is probable cause to seize and detain a citizen;

(g) the failure to properly train and supervise employees, both professional and non-professional, including MATTHEW HALL, NATHAN LEWIS AND BRETT EGGIMAN.

132. As a direct and proximate result of defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died and lost earning capacity. Also, as a direct and proximate result of defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also are claiming funeral and burial expenses and a loss of financial support under this claim.

133. CITY is vicariously liable for the wrongful acts of MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN AND DOES 1-20. In Alaska, "an employer

[may] be held liable for both negligent and intentional torts of its employee, if the employee is acting in the scope of his employment."[5]

134. Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT and seek both survival and wrongful death damages.

135. Plaintiff also seeks attorney fees under this claim.

## NINTH CLAIM FOR RELIEF

**Negligent Infliction of Emotional Distress (Alaska Law)**

(By AHMED HASSAN AGAINST DEFENDANTS MATTHEW HALL, NATHAN LEWIS AND BRETT EGGIMAN, CITY AND DOES 1-4)

136. Plaintiffs repeat and re-allege each and every allegation in paragraphs1-135 of this Complaint with the same force and effect as if fully set forth herein.

137. MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN negligently caused physical injury and death to DECEDENT when MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN discharged their firearms at DECEDENT, striking him multiple times and eventually killing him. The use of deadly force by MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN was excessive, unreasonable and MATTHEW HALL, NATHAN LEWIS AND BRETT EGGIMAN were negligent in discharging their

---

[5] *Nolte v. Municipality of Anchorage*, 2010 U.S. Dist. LEXIS 152201 citing *Taranto v. North Slope Borough*, 909 P.2d 354, 358 (Alaska 1996) ("This court adopted the Restatement (Second) of Agency [hereinafter Restatement] rule that an employer will be held liable for both negligent and intentional torts of its employee, if the employee "is acting in the scope of his employment.").

firearms at DECEDENT, including pre-shooting negligent conduct, actions, inactions and tactics.

138. AHMED HASSAN was present at the scene when MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN fatally discharged their firearms at DECEDENT and AHMED HASSAN was aware that DECEDENT was being injured and killed.

139. As a result of being present at the scene and perceiving his brother, DECEDENT, being fatally shot by MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, HMED HASSAN suffered serious emotional distress, including but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, stress, distress and shame.

140. On information and belief, any ordinary reasonable person would be unable to cope with seeing their brother fatally shot multiple times by the police.

141. CITY is vicariously liable for the wrongful acts of Defendants MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN, pursuant to the Restatement (Second) of Agency's provision regarding scope of employment, found in Section 228, which provides as follows:

(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by purpose to serve the master; and (d) if force is

intentionally used by the servant against another, the use of force is not unexpectable by the master.[6]

142. AHMED HASSAN brings this claim individually and seeks damages under this claim as an individual.

143. The Plaintiffs also seek attorney fees under this claim.

## TENTH CLAIM FOR RELIEF

**False Arrest/False Imprisonment (Under Alaska Law)**

A restraint upon the plaintiff's freedom without proper legal authority.[7]

(BY PLAINTIFF AHMED HASSAN INDIVIDUALLY AGAINST DEFENDANTS CITY, MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN AND DOES 1-20)

144. Plaintiffs repeat and reallege each and every allegation in paragraphs 1through 143 of this Complaint with the same force and effect as if fully set forth herein.

145. Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN, and DOES 1-20, while working as police officers for CITY, and acting within the course and scope of their duties, intentionally deprived AHMED HASSAN of his freedom of movement by use of force, threats of force and unreasonable duress when Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-20 restrained

---

[6] <u>Taranto v. North Slope Burough</u>, 909 P.2d 354, 358 (Alaska 1996) (quoting <u>Restatement (Second) of Agency §</u> <u>228</u>).

[7] <u>Hazen v. Municipality of Anchorage</u>, 718 P.2d 456, 461 (Alaska 1986).

AHMED HASSAN freedom of movement, arrested and transported him to the police station where he was held for several hours denying him the opportunity to grieve his brother, DECEDENT who had just been murdered by the Defendants, MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN AND DOES 1-20. Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN AND DOES 1-20 intentionally detained AHMED HASSAN against his will and in violation of his 4th Amendment Right to be free from unreasonable searches and seizures. DEFENDANTS MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN AND DOES 1-20 detained AHMED HASSAN without probable cause.

146. CITY is vicariously liable for the wrongful acts of Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN AND DOES 1-20. Alaska follows the Restatement (Second) of Agency's provision regarding scope of employment, found in Section 228.[8]

147. The conduct of Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-20 were malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of AHMED HASSAN, entitling Plaintiffs to an award of exemplary and punitive damages.

148. Plaintiffs are seeking compensatory and punitive damages under this claim.

---

[8] Taranto v. North Slope Burough, 909 P.2d 354, 358 (Alaska 1996) (quoting Restatement (Second) of Agency § 228). In determining whether an employee acted within the scope of employment, these Restatement factors are relevant considerations, although not prerequisites, to determine whether an employer should be held responsible for an employee's acts. *Laidlaw Transit, Inc. v. Crouse ex rel. Crouse*, 53 P.3d 1093, 1098-99 (Alaska 2002).

149. Plaintiff also seeks attorney fees under this claim.

## ELEVENTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress (Under Alaska law)**

Extreme and outrageous conduct that intentionally or recklessly inflicted severe emotion distress

(BY PLAINTIFF AHMED HASSAN INDIVIDUALLY AGAINST DEFENDANTS CITY, MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN AND DOES 1-20)

150. Plaintiffs repeat and reallege each and every allegation in paragraphs 1through 149 of this Complaint with the same force and effect as if fully set forth herein.

151. Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN, and DOES 1-20, while working as police officers for CITY, and acting within the course and scope of their duties, intentionally or recklessly deprived AHMED HASSAN of his freedom of movement by use of force, threats of force and or show of authority. Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-20 restrained AHMED HASSAN'S freedom of movement, arrested and transported him to the police station detained for an extended period of time and then subjected him to interrogation against his will knowing that he was laboring under the stress, anxiety, and strain of observing his brother the DECEDENT being shot multiple times and killed by the same people or entity now demanding that he, AHMED HASSAN, speak to them and answer questions about his brother the DECEDENT.

152. CITY is vicariously liable for the wrongful acts of Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN AND DOES 1-20. Alaska follows the Restatement (Second) of Agency's provision regarding scope of employment, found in <u>Section 228</u>, which provides as follows:

Conduct of a servant is within the scope of employment if, but only if: (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.[9]

153. The conduct of Defendants MATTHEW HALL, NATHAN LEWIS, BRETT EGGIMAN and DOES 1-20 were malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of AHMED HASSAN and with intent or recklessness entitling Plaintiffs to an award of exemplary and punitive damages.

154. Plaintiffs are seeking punitive and compensatory damages under this claim.

155. Plaintiff also seeks attorney fees under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs AHMED HASSAN AS REPRESENTATIVE OF THE STATE OF BISHAR ALI HASSAN AND INDIVIDUALLY, AND BILAY ADEN

---

[9] <u>Taranto v. North Slope Burough</u>, 909 P.2d 354, 358 (Alaska 1996) (quoting <u>Restatement (Second) of Agency §</u> <u>228</u>). In determining whether an employee acted within the scope of employment, these Restatement factors are relevant considerations, although not prerequisites, to determine whether an employer should be held responsible for an employee's acts. *Laidlaw Transit, Inc. v. Crouse ex rel. Crouse*, 53 P.3d 1093, 1098-99 (Alaska 2002).

IDIRIS, request entry of judgment in their favor and against Defendants, Municipality of Anchorage, MATTHEW HALL, NATHAN LEWIS and BRETT EGGIMAN and DOES 1-20, inclusive, as follows:

A. For compensatory damages in excess of $20,000,000, including both survival damages and wrongful death damages under federal and state law, in an amount to be proven at trial;

B. For funeral and burial expenses, and loss of financial support;

C. For punitive damages against the individual defendants in an amount to be proven at trial;

D. For prejudgment and post judgment interest.

E. For reasonable costs of this suit and attorneys' fees.

F. For such further other relief as the Court may deem just, proper, and appropriate.


DATED: March 29th, 2021 in Anchorage Alaska.


By /s/ Rex Lamont Butler
    Rex Lamont Butler, ABN8310105
    REX LAMONT BUTLER AND ASSOCIATES INC. P.C.
    Attorney for Plaintiffs estate of Bishar Ali Hassan,
    Ahmed Hassan and Belay Aden Idiris

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| THE ESTATE OF BISHAR ALI HASSAN, | ) |
| | ) |
| AHMED HASSAN AND BILAY ADEN IDIRIS, | ) |
| | ) |
| PLAINTIFFS, | ) |
| Vs. | ) |
| | ) |
| MUNICIPALITY AND CITY OF ANCHORAGE, | ) |
| | ) |
| MATTHEW HALL, NATHAN LEWIS, BRETT | ) |
| | ) |
| EGGIMAN, AND DOES 1-20, INCLUSIVE, | ) |
| | ) |
| DEFENDANTS. | ) Case No. 3:21-cv- |
| _____ | ) |

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.


DATED: March 29th, 2021 in Anchorage Alaska.


By /s/ Rex Lamont Butler
    Rex Lamont Butler, ABN8310105
    REX LAMONT BUTLER AND ASSOCIATES INC. P.C.
    Attorney for Plaintiffs estate of Bishar Ali Hassan,
    Ahmed Hassan and Belay Aden Idiris