Pamela D. Weiss
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
Email: uslit@muni.org

Attorney for Defendants
Municipality of Anchorage, Matthew Hall,
Nathan Lewis, Brett Eggiman

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ESTATE OF BISHAR ALI HASSAN, AHMED HASSAN, and BILAY ADEN IDIRIS, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| MUNICIPALITY AND CITY OF ANCHORAGE, MATHEW HALL, NATHAN LEWIS, BRETT EGGIMAN, and DOES 1-2 INCLUSIVE, | ) ) ) ) ) ) |
| Defendants. | ) Case No. 3:21-cv-00076 SLG ) |

## MUNICIPAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Municipality of Anchorage, Matthew Hall, Nathan Lewis, and Brett Eggiman (collectively "Municipal Defendants"), by and through Assistant Municipal Attorney Pamela D. Weiss, move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

# INTRODUCTION

Plaintiffs' complaint asserts numerous state and federal claims, all arising out of the shooting of a man, later identified as Bishar Hassan ("Bishar"),[1] by three Anchorage Police Department ("APD") officers on April 1, 2019. Plaintiffs include the estate, through the personal representative Ahmed Hassan ("Ahmed"), Ahmed in his individual capacity and Bishar's mother, Bilay Idiris. The Complaint names three individual officers – Officer Nathan Lewis, Officer Matthew Hall and Officer Brett Eggiman –who fired their weapons at Bishar on that day.

The officers were all responding to a series of calls concerning a man with a gun. Only a few seconds after locating him, Bishar pulled a gun from his waistband and pointed it in their direction. This was captured on video from the officers' vehicles.

The deadline for discovery has passed. Municipal Defendants had sought and received an extension of time for the filing of this motion in order to obtain the transcript of expert Urey Patrick. Despite counsel's efforts, Municipal Defendants had not yet received transcripts of that deposition; however, this motion relies upon his report.

For the reasons discussed below, Municipal Defendants are entitled to summary judgment on all the claims brought in this action.

---

[1] Municipal Defendants would not ordinarily refer to individuals by their first name in motions. However, since there are two individuals with the same last name, Municipal Defendants will utilize Bishar and Ahmed to refer to the two men so that there is no confusion.

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 2 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 2 of 29

# SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2] Material facts are those that might affect the outcome of the case.[3] A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[4]

If the moving party satisfies its burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.[5] To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[6]

A party cannot avoid summary judgment by relying solely on conclusory and unsupported allegations.[7] Nor can the party avoid summary judgment by relying on mere allegations or denials.[8] The opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.[9] Where there is a video that captures the events, as is the case

---

[2] Fed. R. Civ. P. 56.
[3] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).
[4] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).
[5] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).
[6] *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987).
[7] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).
[8] *Anderson,* 477 U.S. at 248-249.
[9] *See Celotex Corp.,* 477 U.S. at 324.

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 3 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 3 of 29

here, "no genuine dispute of fact exists for anything that is clearly discernable" in the video.[10]

To reach a level of genuine dispute, the evidence must be such as to allow "a reasonable fact-finder to return a verdict for the non-moving party."[11] "If the evidence provided by the non-moving party is 'merely colorable' or 'not significantly probative,' summary judgment is appropriate."[12]

## STATEMENT OF THE CASE[13]

### A. 911 Calls Regarding a Man with a Gun.

At approximately 5:45pm on April 1, 2019, APD dispatch began receiving calls about a man with a handgun in the vicinity of the Walmart on A Street in Anchorage.[14] The first caller reported that a man wearing a black jacket and white shirt pulled a handgun out of his jacket.[15] In another call a minute later, it was reported the man pulled a gun from inside his pants or jacket.[16]

APD then received a flurry of calls. One reported a black male adult carrying a

---

[10] *Estate of Simpson v. Yellowstone County*, 229 F.Supp.3d 1192, 1196 (D. Mont. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

[11] *Anderson,* 477 U.S. at 248.

[12] *Millo v. Delius*, 872 F.Supp.2d 867, 872 (D. Alaska 2012) (citation omitted).

[13] Facts are primarily taken from the Computer Aided Dispatch (CAD), officer interviews with detectives and the videos from the officers' cars. The police reports and officer interviews are marked as Exhibit A and accompanied by an Affidavit of APD Records Custodian. The In Car Video ("ICV") recordings are attached as Exhibits B-1 through B-3, which will be filed conventionally.

[14] *See generally* CAD, attached as Exhibit A at 4-11. Specific references to the CAD will utilize the time stamp on the left-hand side.

[15] Exh. A, CAD at 17:45:30.

[16] Exh. A, CAD at 17:46:34

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 4 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 4 of 29

black handgun,[17] while another reported a man with a short afro wearing a puffy blue jacket was walking in traffic, waving a black handgun.[18] Another caller reported the man had a black handgun that looked like a Glock, and was waving it around.[19] He was reported to be wearing a dark puffy jacket and white pants. [20]

Calls continued to come in with details about what the man was doing with the gun. A caller reported the man was brandishing the handgun and walking northbound in traffic.[21] Another reported he was waving the gun around on the sidewalk and kept putting it back in his pocket.[22] A caller later reported the man had tucked the gun into his front right pants or jacket.[23]

One of the original callers called back to inform APD that the man had boarded People Mover Bus No. 25 heading northbound on A Street.[24] Less than two minutes later he got off the bus at 16th and A Street.[25] Twelve seconds after that, shots were fired.[26]

### B. Officers' Arrival & Shooting Captured on Video.

Officers Hall, Lewis and Eggiman (who was accompanied by his Field Training

---

[17] Exh. A, CAD at 17:47:14.
[18] Exh. A, CAD at 17:47:17.
[19] Exh. A, CAD at 17:47:22.
[20] Exh. A, CAD at 17:47:14, :22 & :33.
[21] Exh. A, CAD at 17:47:33.
[22] Exh. A, CAD at 17:47:40.
[23] Exh. A, CAD at 17:49:00.
[24] Exh. A, CAD at 17:49:43.
[25] Exh. A, CAD at 17:51:10. This report came from Officer Hall to dispatch, as shown by the 23C2 identifier in the CAD.
[26] Exh. A, CAD at 17:51:22.

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 5 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 5 of 29

Officer Ashbaugh) drove northbound on A Street.[27]  Officer Hall pulled his vehicle onto

the sidewalk behind the man.[28]  Officer Lewis pulled up behind Officer Hall.[29]  Officer

Eggiman pulled to the side of the road next to the curb in line with Officer Hall's car.[30]

Officer Hall turned on his lights and flickered his siren.[31]

Video from each of the officers' ICV system captured the events from slightly

different angles.[32]  The incident occurred very quickly, in the span of just a few seconds.

Accordingly, a forensic video analyst was retained to review the video.  He isolated each

frame and prepared a report along with a synchronized analysis that shows each ICV

cameras view in a single still image. [33]  The progression, which contains images just

milliseconds apart, allows us to see the timing of events in a way that is impossible in real

time given that the events took place in a matter of seconds.

As the officers arrive, Bishar turns around and walks towards the police vehicles,

approximately half a second before Officer Hall's vehicle comes to a complete stop.[34]  As

---

[27] *See* ICV Eggiman at :04-1:02, attached at Exhibit B-1; ICV Hall at :00-:55, attached at Exhibit B-2; ICV Lewis at 7:59-9:03, attached as Exhibit B-3.
[28] Exh. A at 26 (Interview of Ofc. Hall).
[29] Exh. A at 37 (Interview of Ofc. Lewis); ICV Lewis, Ex. B-3 at 8:54-9:04.
[30] Exh. A at 14 (Interview of Ofc. Eggiman).
[31] Exh. A at 26 (Interview of Ofc. Hall).
[32] Only a small segment of the recording is of the encounter and shooting itself. *See* Exh. B-l, ICV Eggiman at 1:18-2:02; Exh. B-2, ICV Hall at :58-1:10.  The ICV of Lewis does not capture Hassan's actions because the vehicle is directly behind Hall's but it does show Officer Hall drawing his weapon in response to Bishar pulling the gun. Exh. B-3 at 9:08
[33] *See* Report of Video Analysis ("Report") & Video Synchronization Analysis Slides ("Slides"), attached to Declaration of Grant Fredericks at Exhibits C and C-1.  Exhibit C-1, which contains the slides, will be filed conventionally.
[34] *See* Exh. C-1, Slides 98 (Bishar turns around at 17:52:36.023) & 143 (Ofc. Hall's vehicle comes to a complete stop at 17:52:37.524).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 6 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 6 of 29

Officer Hall emerges from his vehicle, he twice directs Bishar to "stop right there."[35] However, Bishar continues to move towards the officers.[36]

As Bishar continues walking towards the officer, he moves his right hand towards his right hip.[37] Bishar's hand contacts the gun just over half a second later.[38] Bishar then removes the gun from his hip area and with his finger near the trigger guard moves the gun towards the officers.[39] At about same time Bishar removes the gun, Officer Hall begins to give a second command, but says only "step."[40] Officer Hall then starts to draw his own firearm[41] as Bishar continues walking towards the officers, moves the muzzle of the gun towards Officer Hall.[42]

Officer Hall fired the first shot.[43] At that point, Bishar was holding the gun outstretched with the muzzle directed towards Officer Hall.[44] The officers fired a total of 13 shots in the span of 2.4 seconds,[45] each one only a fraction of a section after the other.[46] Officer Hall fired a total of eight shots, Officer Eggiman fired four and Officer Lewis fired a single shot.[47] Many of the shots did not strike Bishar.[48]

---

[35] Exh. C, Report at 17; Exh. C-1, Slide 224; Exh. B-2, ICV Hall at 1:05-1:06 (audio).
[36] Exh. C, Report at 17; Exh. C-1, Slides 225-255.
[37] Exh. C-1, Slide 256 (at 17:52:41.361).
[38] Exh. C-1, Slide 274 (at 17:52:41.995).
[39] Exh. C-1, Slides 269, 274, 285 & 290-291.
[40] Exh. C, Report at p. 18; Exh. C-1, Slide 292.
[41] Exh. C-1, Slide 294 (17:52:42.663).
[42] Exh. C-1, Slides 295-309.
[43] Exh. B-2, ICV Hall at 1:08; Exh. C-1, Slide 310 (at 17:52:43.197).
[44] *Id.*
[45] Exh. C, Report at p. 24.
[46] *Id.* at p. 20-22.
[47] *Id.*
[48] *Id.* at p. 5.

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 7 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 7 of 29

The Video Synchronization Analysis prepared by retained expert Grant Fredericks allows us to see how Bishar's actions match up with the timing of the shots. After the first shot, Bishar began to drop the gun.[49] The gun hits the ground as the third shot is fired.[50] Bishar then starts falling to the ground, though he does not fall completely until the eighth or ninth shot.[51] He fell with his back was facing the officers and his hands out of view.[52] He was moving the entire time.

Eventually the officers approached Bishar, handcuffed him and began to administer first aid.[53] It was later determined that the gun was a pellet pistol reproduction of a Beretta semiautomatic.[54]

### C. Contact with Ahmed Hassan After the Shooting.

Bishar's brother, Ahmed, had arrived on the scene shortly before the shooting occurred.[55] He was sitting in his vehicle on 16th Avenue at the stop sign on A Street, to the south of Bishar and the officers.[56] He was still there when officers approached him after the shooting while they were identifying witnesses to the shooting.[57]

Ahmed was driven to the APD station where he met with detectives. The contact

---

[49] Exh. C-1, Slide 314.
[50] Exh. C-1, Slide 325.
[51] Exh. C-1, Slides 343 & 346.
[52] Exh. C, Report at 20; Exh. C-1, Slides 326-386.
[53] ICV Eggiman, Exh. B-1 at 2:02 onward.
[54] Exh. A at 16 (Interview of Ofc. Hall).
[55] Transcript of Deposition of Ahmed Hassan at 30:9-12 & 34:21-25, attached hereto as Exhibit D.
[56] *Id.* at 39:23-25 & 42:6-14.
[57] *Id.* at 48:7-17.

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 8 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 8 of 29

with the transporting officer is recorded.[58]   The interview with Detective Foraker was recorded as well.[59]   Near the end of their meeting, Detective Foraker was notified that Bishar has not survived.[60]   Detective Foraker then notified Ahmed that his brother had died.[61]

The Detective arranged transportation for Ahmed to his mother's house so that Ahmed could inform his mother of what had happened.[62]   Officers accompanied Ahmed and, with his permission, went inside while Ahmed explained the situation to his mother.[63]   Afterwards the officers left.[64]

## ARGUMENT

## I.   Unreasonable Search and Seizure - Excessive Force (42 U.S.C. ¶ 1983).

Plaintiff's central claim is excessive force.[65]   "[W]hen [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a seizure has occurred."[66]   For purposes of this motion, the court should assume that a seizure did occur when police shot Mr. Hassan.[67]

---

[58] Attached as Exhibit E is a transcript of this recording.
[59] Attached as Exhibit F is a transcript of this recording.
[60] Exh. F, Tr. at 42:17
[61] Exh. F, Tr. at 48:20-49:1
[62] Exh. F, Tr. at 50:19-21.
[63] *See* Exh. E, Tr. at 11-18 (transport), Tr. at 18:16-17 (allowing officers to come inside), Tr. 18-36 (discussion in apartment).
[64] Exh. E, Tr. at 36:6-7.
[65] Complaint (Dkt. 1) at ¶¶ 71-80 (Second Claim).
[66] *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).
[67] *See Torres v. Madrid*, 141 S.Ct. 989, 999 (2021) (finding officers seized the person when they ordered him to stop and shot him).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 9 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 9 of 29

The Fourth Amendment prohibits only *unreasonable* seizure. One way that a seizure can be unreasonable is through excessive use of force. Whether a police officer uses excessive force to effectuate an arrest depends on amount of force used, balanced against government's need for intrusion as measured by "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape."[68] The most important factor, however, is whether the suspect posed an imminent threat to the safety of officers or others.[69]

## A. Qualified Immunity Standard.

Qualified immunity shields government officials from civil liability when their actions do not violate clearly established statutory or constitutional rights.[70] The goal is to achieve a balance between the "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[71] This court should faithfully guard "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging vigorous exercise of official authority."[72]

In determining whether a police officer is entitled to qualified immunity for federal claims, two questions are presented: "(1) whether, taken in the light most

---

[68] *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (citations omitted).

[69] *George v. Morris,* 736 F.3d 829, 838 (9th Cir. 2013) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

[70] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[71] *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (citations omitted).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 10 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 10 of 29

favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case."[73]  The court has discretion as to which of the questions should be addressed first.[74]

Qualified immunity shields an officer from liability even if his actions resulted from a "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."[75] Even if there is a violation, if an officer's use of force is premised on a reasonable belief that such force was lawful, the officer will be granted qualified immunity.[76]

Where there are no disputes of material historical facts, but only disputes as to the inferences that may be properly drawn, the court should decide the issue of qualified immunity as a matter of law.[77]

### B. Officers Did Not Use Excessive Force.

In analyzing an excessive force claim under the Fourth Amendment, the court asks whether the officer's actions were "'objectively reasonably' in light of the facts and circumstances confronting them."[78]  The officers' actions are to be evaluated from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of

---

[72] *Harlow v. Fitzgerald,* 457 U.S. 800, 807 (1982) (citation omitted).
[73] *al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (reversed on other grounds).
[74] *Pearson v. Callahan*, 555 U.S. at 226.
[75] *Id.* at 231 (citation omitted).
[76]  *Bryan v. McPherson*, 630 F.3d at 832.
[77] *Conner v. Heiman,* 672 F.3d 1126, 1131 (9th Cir. 2012).
[78] *Bryan v. McPherson*, 630 F.3d at 823 (quoting *Graham v. Connor,* 490 U.S. 286, 397 (1989)).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 11 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 11 of 29

hindsight.[79]  There is no special Fourth Amendment standard for unconstitutional deadly force; "all that matters is whether [the police officer's] actions were reasonable."[80]

Given the undisputed facts, a reasonable officer would believe this was a situation where deadly force was authorized.  The material facts here are undisputed.  There were numerous reports of a man with a gun.[81]  Once the officers located him, everything happened quickly.  Bishar turned around and started walking towards the officers before the officers' vehicles had even come to a stop.[82]  He continued to approach even after being told to "stop".[83]  He then he pulled a handgun from his waist area and raised it up with the muzzle pointed towards the officers and his finger near the trigger guard.[84]

Officers are trained to recognize risks of imminent death or serious injury and to react to protect themselves and others.[85]  Officers are forced to react to actions of a subject and cannot know what that person intends to do.[86]  With this in mind, use of force expert Urey Patrick concluded that the officers' decisions to use deadly force were consistent with training policy and accepted law enforcement practices.[87]

---

[79] *Graham v. Connor*, 490 U.S. at 396.
[80] *Acosta v. Hill*, 504 F.3d 1323, 1324 (9th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. at 1777-78).
[81] Exh. A, CAD.
[82] *See* Statement of the Case, section B, *supra.*
[83] Exh. B-2, ICV Hall at 1:05-1:06; Exh. C-1, Slides 225-226.
[84] Exh. C-1, Slides 256-284.  Even though we now know that the gun was a pellet gun, the use of force is evaluated from the information known at the time.  All the evidence shows that the gun appeared to be a "real" firearm.  Exh. A, CAD; Videos, Exhs. B-1 & B-2.
[85] Report of use of force expert Urey Patrick, attached hereto as Exhibit G at 10.
[86] Exh. G at 12.
[87] Exh. G at 13.

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 12 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 12 of 29

Mr. Patrick explains that it was reasonable for the officers to fire their weapons even before Bishar shot them. Officers are trained that they may use deadly force to protect themselves by using force to pre-empt a reasonable risk of death of serious injury in order to prevent the imminent risk.[88] They need not wait for the subject to fire a bullet and hope that it misses them before firing their weapons.[89]

> An officer confronting an unpraised firearm is not trained to wait and see if the suspecting wielding the gun shoots it at him. An officer confronting a gun pointed at him at close range, as did Hall and the other officers in this encounter with Hassan, is confronting what they have been trained to recognize as an immediate and unequivocal risk.[90]

Any hesitation – either to wait and see or to seek cover or retreat - would have ceded any opportunity to protect themselves.[91]

Indeed, the officers shot Bishar because they believed they or fellow officers were in imminent danger when they saw Bishar pull out the gun out and raising it up towards the officers. Officer Hall believed that Bishar "was going to shoot us."[92] Officer Lewis also told investigators that he felt that Bishar "could've shot at us."[93] Officer Eggiman said it "looked like [Bishar] was going to shoot at Officer Hall, or whoever was to the east of me."[94]

The number of shots the officers fired was also objectively reasonable under the circumstances. Officers are trained that a subject can pose a serious threat even after a

---

[88] *Id.*
[89] *Id.*
[90] *Id.* at 14.
[91] *Id.*
[92] Exh. A at 27 (Interview of Ofc. Hall).
[93] Exh A at 39 (Interview of Ofc. Lewis).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 13 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 13 of 29

single shot because the officer may miss or the attack may continue because incapacitation takes time.[95]  Accordingly, officers are trained to continue shooting until they perceive the threat has ended.[96]  Mr. Patrick evaluated the incident and concluded their actions in this regard were objectively reasonable as well.[97]

In hindsight we now know that some of the shots were fired after Bishar had fallen to the ground.  But the use of force is not to be judged with benefit hindsight.[98] All the shots were fired within a very short period of time – just 2.4 seconds.[99]  Meanwhile, it takes a finite amount of time for officers to perceive that the risk has been mitigated or passed and these decisions have to be made quickly.[100]  And throughout the entire event all the individuals are acting, reacting and moving independently of one another.[101]  During the time it takes for an officer to recognize a threat has ended, decide to stop shooting and implement that decision, additional shots may be fired even though, with the benefit of hindsight and technology, one can see that the threat may have ended.[102]  The realities of action and reaction time do not make the decisions surrounding the use of force unreasonable.

The *Graham* factors demonstrate a strong governmental interest in the officers' use of force. Indeed, the courts recognize that "when someone points a gun at an officer,

---

[94] Exh. A at 15 (Interview Eggiman)
[95] Exh. G at 13.
[96] *Id.* at 13, 16.
[97] *Id.* at 17.
[98] *Graham v. Connor*, 490 U.S. at 396.
[99] Exh. C, Report at 24.
[100] Exh. G at 14.
[101] *Id.* at 18.

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 14 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 14 of 29

the 'Constitution undoubtedly entitles the officer to respond with deadly force.'"[103]  The officers were responding to a man with a gun call.  He ignored a command to stop, pulled a weapon, and pointed it in the direction of the officers.  The officers, faced with this deadly threat, responded appropriately to protect themselves and others.

### C.  No Violation of Clearly Established Rights.

Regardless, the officers are entitled to qualified immunity if they could have a reasonable belief that the force used was reasonable at the time the force was employed.[104]

The doctrine of qualified immunity shields officials from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[105]  To be clearly established, a "rule must be dictated by controlling authority or by a robust consensus of cases of persuasive authority" so as to put the question beyond debate.[106]

To evaluate whether a right is clearly established, courts are to define the law to a "high degree of specificity" not "at a high level of generality."[107]  Whether a right is clearly established is a question of law for the judge.[108]

---

[102] *Id.* at 19.

[103] *T.D.P. v. City of Oakland*, 2019 WL 913840 at *14 (N.D. Cal. Feb. 24, 2019) (citing *George v. Morris*, 736 F.3d at 838).

[104] *Bryan v. MacPherson*, 630 F.3d at 832.

[105] *Pearson v. Callahan*, 555 U.S. at 231.

[106] *Perez v. City of Fresno*, 2022 WL 826990 at *11 (E.D. Cal. March 18, 2022) (*citing District of Columbia v. Wesby,* 138 S.Ct. 577, 589 (2018)).

[107] *Wesby*, 138 S.Ct. at 590 (citing *Mullenix v. Luna,* 136 S.Ct. 305, 309 (2015) (*per curiam*) and *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 2014)).

[108] *Perez*, 2022 WL 826990 at *11 (citing *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017))

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 15 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 15 of 29

Plaintiffs can cite no controlling authority that would have put the officers on notice that the use of deadly force in the circumstances they faced would have violated Bishar's rights. On the contrary, the officers would have believe their conduct was lawful given the established law in this circuit.

The courts have clearly explained that where an individual points a gun in an officer's direction, the constitution "undoubtedly entitles that officer to respond with deadly force."[109] A recent decision in *T.D.P. v. City of Oakland*[110] confirms the officers in this case are entitled to qualified immunity. *T.D.P.* involved a fact pattern where a man walked towards officers and was seen with a gun. The four officers shot him 15 times in 3.6 seconds.[111] The court agreed that when someone points a gun at officers, officers are entitled to respond with deadly force.[112] However, the court denied summary judgment only because there was a dispute as to whether he had the gun in his hand or simply lifted his shirt to show it to the officers.[113] The surveillance videos did not capture tis critical point and there was conflicting testimony.[114] In the present case, by contrast, there can be no disputes about Bishar's actions. The video shows that Bishar had the gun, held it in his hand, had his finger was near the trigger and the muzzle was pointed in

---

[109] *George v. Morris,* 736 F.3d 829, 838 (9th Cir. 2013) (citing *Long v. City & Cnty. Honolulu*, 511 F.3d 901, 906 (9th Cir. 2017) and discussing *Scott v. Henrick*, 39 F.3d 912, 914 (9th Cir. 1994)).
[110] 2019 WL 913840.
[111] *Id.* at *2.
[112] *Id.* at *14.
[113] *Id.* at *13.
[114] *Id.* at *14.

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 16 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 16 of 29

the direction of the responding officers.[115]  Under these known, undisputed facts, the officers were entitled to use deadly force.  Further, they certainly would have believed their use of deadly force was lawful so that they are entitled to qualified immunity.

## II.    *Monell* Claim Against MOA (42 USC ¶ 1983).

Plaintiff asserts *Monell* claims against the Municipality of Anchorage.[116]  There is no vicarious liability for claims arising under 42 U.S.C. § 1983.[117]  To establish a §1983 municipal liability claim, plaintiff must prove (1) violation of federal right that is (2) attributable to a municipal policy or practice.[118]  Without an underlying constitutional violation, there can be no *Monell* claim.  Accordingly, if this court concludes that there was no violation of plaintiff's Fourth Amendment right, there can be no separate municipal liability.

Even if the court does not grant summary judgment to individual defendants on the excessive force claim, the Municipality is entitled to summary judgment on any of the asserted *Monell* claims.   To prevail on the *Monell* claims, plaintiff must prove (1) plaintiff's constitutional rights were violated; (2) the municipality had a custom or practice in place that amounted to deliberate indifference; and (3) that custom or practice was the moving force behind the constitutional violation.[119]  The Ninth Circuit recognizes several categories of "official municipal policy," including an action pursuant to a

---

[115] Exh. B-1 at 1:05-1:06 & Exh. B-2 at 1:07-1:08.
[116]  Complaint (Dkt. 1) ¶ 93-115 (Fourth and Fifth Claims for Relief)
[117] *Monell v. Dept. of Soc. Servs., City of New York*, 436 U.S. 658, 694-95 (1978).
[118] *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).
[119] *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 17 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 17 of 29

longstanding custom or practice, ratifications of an employee's action by a final policy maker and a failure to adequately train and supervise.[120]

Plaintiffs have not articulated what policy they believe is deficient, why it is infirm or how any such policy harmed them. Plaintiffs have not provided any evidence that could establish deliberate indifference or that a custom or practice was the moving force behind a constitutional violation. Nor is there any evidence of a pattern of constitutional violations that would have alerted MOA that its training or supervision was inadequate.

## III. Other Federal and State Claims

### A. Unlawful Search and Seizure - 4th Amendment (42 U.S.C. ¶ 1983).

The Complaint asserts that Bishar's Fourth Amendment rights were also violated when the officers "detained and arrested" him without reasonable suspicion.[121] It is not clear which facts plaintiffs rely upon to support their allegation that this right has been violated since there was no "seizure" of Bishar aside from the shooting itself.[122] Municipal Defendants have agreed that the shooting of Bishar constituted a seizure to which the 4th Amendment applies. *See* Section II, above.

---

[120] *Christie v. Iopa*, 176 F.3d 1231, 1235-1240 (9th Cir. 1999); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989).

[121] Complaint (Dkt.1) ¶¶ 64-70.

[122] Plaintiffs allege inadequate training on this topic as well. But when asked in discovery about the facts that supported the claim plaintiff's answer was less than illuminating.

> Audio and video recordings establishing information the defendant received before seizing and shooting the decedent. A video showing how the defendants approached the decedent, seized him and executed him. Alaska law as relates to carrying guns in public, stops searches and seizures. The fact that a well-trained police officer should have known that they had no right to legally seize the decedent.

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 18 of 29

There is no reasonable suspicion requirement to simply contact an individual. An individual can simply ignore such attempts.[123] Indeed, all that happened here was officers attempted to contact Bishar before the incident occurred. Assuming, however, that there was a detention separate from the shooting, Municipal Defendants are entitled to summary judgment on this claim because there was reasonable suspicion to stop Bishar.

The Fourth Amendment permits officers to conduct brief investigative stops when an officer has reasonable suspicion - that is, when the officer has a "particularized and objective basis for suspecting the particular person stopped of … criminal activity."[124] Tips called into 911 may be sufficient to establish reasonable suspicion if they exhibit sufficient indicia of reliability and provide information on potential illegal activity serious enough to justify a stop.[125]

At least two cases demonstrate that the numerous calls to 911 about a man waving a gun were sufficient to establish reasonable suspicion in this instance.[126] In *U.S. v. Vandegroen,* a bar employee's 911 call reporting that patrons had seen a man in the area

---

Plaintiff's (Ahmed Hassan) Response to Interrogatory No. 2, attached at Exhibit H.
[123] *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("when an officer without reasonable suspicion or probable cause approaching an individual, the individual has the right to ignore the police and go about his business").
[124] *Navarette v. California*, 572 U.S. 393 396-97 (2014).
[125] *U.S. v. Vandergroen*, 964 F.3d 876, 879 (9th Cir. 2020); *U.S. v. Edwards*, 761 F.3d 977, 983 (9th Cir. 2014).
[126] AMC 8.25.030A.1. makes it a misdemeanor to "shoot, discharge or flourish any firearm, air rifle, or air pistol". Flourishing includes "waving". *See* <Merriam-webster.com/dictionary/flourish> (visited Sept. 30, 2022).

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 19 of 29

with a pistol was found sufficiently reliable to support reasonable suspicion.[127] Similarly, in *U.S. v. Reed,* a telephone tip reporting a man waving a gun at an intersection was sufficient to support reasonable suspicion to stop and frisk.[128] In both those cases, there were questions as to whether the tips were anonymous or not. Here, however, there is no doubt the calls were not anonymous.[129] Thus, the officers would have reasonably believed they could stop and detain Bishar and that such action would not violate his rights under the Fourth Amendment.

### B. Substantive Due Process - 014th Amendment.

Plaintiffs bring claims for deprivation of their substantive due process rights.[130] Parents may assert a Fourteenth Amendment Due Process claim if they are deprived of liberty interest in the companionship and society of a child.[131] However, siblings do not have the same right to bring such a claim.[132] Accordingly, only Bishar's mother Bilay Idiris ("Idiris") may bring this claim; Ahmed cannot.[133]

A claim asserting violation of a plaintiffs' substantive due process rights under the Fourteenth Amendment "must show that the officers' conduct 'shocks the conscience."[134] The test to determine whether conduct shocks the conscience turns on whether the

---

[127] 964 F.3d at 880-881.
[128] 1 Fed. Appx. 706, 707-708 (9th Cir. 2001).
[129] *See* Exh. A, CAD (identifying callers).
[130] Complaint (Dkt. 1) at ¶¶ 81-92 (Third Claim).
[131] *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013).
[132] *Ward v. City of San Jose*, 967 F.2d 280, 283-84 (9th Cir. 1991) (adopting rule of *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) that rejects interest for children consonant with parents under the 14th Amendment).
[133] If the court grants summary judgment on this claim, Idiris has no further claims.
[134] *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 20 of 29

Case 3:21-cv-00706-SLG   Document 34   Filed 10/05/22   Page 20 of 29

officers had time to deliberate their conduct.[135]

In this case, the undisputed facts show there was not sufficient time for deliberation. They were responding to multiple 911 calls about a man waving a gun.[136] Little more than 5 seconds passed from the time the officers arrived on scene (at 17:52:37.524) until Bishar drew the gun from his waistband and raised it towards the officers (at 17:57:42.663).[137] And it took only 1.168 seconds for Bishar to pull the gun out.[138]

When conduct escalates so quickly that officers have to make a "snap judgment," the law requires a more demanding showing by plaintiff - that the officers "acted with a purpose to harm [the decedent] for reasons unrelated to legitimate law enforcement objectives."[139] Legitimate objectives include "arrest, self-protection, and protection of the public."[140] Conversely, illegitimate objectives include "when the officer had any ulterior motives for using force against the suspect, such as to 'bully the suspect' or 'get even' or when an officer uses force against a clearly harmless or subdued suspect."[141] Idiris cannot point to any evidence that could establish the officers acted with "purpose to harm" unrelated to their law enforcement objectives. Thus, Municipal Defendants are entitled to summary judgment on this claim.

---

[135] *Id.*
[136] *See* Exh A, CAD.
[137] ICV videos, Exhs. B-1 & B-2; Exh. C, Report at 17-19.
[138] Exh C, Report at 18.
[139] *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).
[140] *Ochoa*, 26 F.4th at 1056 (*citing Foster v. City of Indio*, 908 F.3d 1204,1211 (9th Cir. 2018)).
[141] *Id.* (citing *Foster*, 908 F.3d at 1211 (quoting *Gonzalez v. City of Anaheim*, 747 F.3d 789, 798 (9th Cir. 2014); *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 21 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 21 of 29

## C. State Law Tort Claims

Plaintiffs assert three separate tort claims: false arrest, battery and negligence. [142] Given the allegations in this case and the conduct on which they are based, these claims are equivalent to the excessive force claim.[143]  Like the ¶ 1983 claims, the officers are protected by qualified immunity from these tort claims.[144]

Alaska usually follows federal case law with respect to qualified immunity.[145] Police officers in Alaska are entitled to qualified immunity in excessive force cases if the officer's conduct was objectively reasonable or the officer reasonably believed the conduct was lawful, even if it was not.[146]  In commenting on the Supreme Court decision on qualified immunity in *Saucier v. Katz*, the Alaska Supreme Court stated:

> [A]n officer is entitled to qualified immunity if the officer's conduct was an objectively reasonable use of force or the officer reasonably believed that the conduct was lawful.  We have explained that '[t]his test recognizes that there may be behavior that is objectively unreasonable but that nonetheless an officer might have reasonably believed was reasonable.  If this is the case, then the officer should be entitled to qualified immunity for his behavior.'[147]

---

[142] Plaintiffs also allege negligent training and supervision with respect to use of force, reasonable suspicion and probable cause.  Complaint para 131(a), (e), (f) & (g).  But these claims are premised entirely on a finding that the officers are liable.  If there is no liability by the officers for excessive force under any state law tort theory, there can be no liability for negligent hiring, training or supervision.

[143] *See* Complaint (Dkt. 1) at ¶ 117 (alleging false arrest based on "[shooting] DECEDENT multiple times"); ¶ 125 (alleging battery for "intentionally [shooting] DECEDENT multiple times"); ¶ 131(b) (failure to adequately properly assess need to…use force, including deadly force") & ¶ 131(c) (negligent use of force, including deadly force).

[144] *See Prentzel v. State, Dept. of Public Safety*, 169 P.3d 573 (Alaska 2007).

[145] *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 806 (Alaska 2011); *Sheldon v. City of Ambler*, 178 P.3d 459, 463 (Alaska 2008).

[146] *Olson v. City of Hooper Bay*, 251 P.3d 1024, 132 (Alaska 2011).

[147] *Russell v. Virg-In*, 258 P.3d 795, 803 (Alaska 2011) (quoting *Sheldon*, 178 P.3d at 463).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 22 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 22 of 29

Therefore, Municipal Defendants assume the same qualified immunity analysis will apply to these state claims.

For the same reasons articulated in the Argument Section I. B. and I.C., above the officers are entitled to qualified immunity for those claims under state law arising out of the same facts and circumstances.

## IV. Ahmed's Individual Claims

### A. False Arrest

False arrest is established by "showing a restraint upon the plaintiff's freedom without proper legal authority."[148] But the recordings of the interactions between Ahmed and APD officers and detectives show that there was no restraint on his freedom.

The recordings are the best source of information. And the audio starts at the beginning - even before Ahmed has gotten into an APD vehicle.[149] The very first thing the officer does is tell Ahmed that he is not under arrest.[150] When they arrive at the APD station, the officer tells Ahmed he can ask for anything and offers him food and water, both of which Ahmed declined.[151] The officer then assisted Ahmed with making phone calls and worked to locate a charger for Ahmed's phone.[152]

When the detectives arrived to interview Ahmed, Ahmed was again told he was not under arrest.[153] And during their discussion, the detective checks in to be sure that

---

[148] *Prentzel,* 169 P.3d at 583 (citation omitted).
[149] *See* Exh. E.
[150] Exh. E, Tr. at 2:4-5.
[151] Exh E, Tr. at 4:6-19.
[152] Exh E, Tr. at 4:21-5:18 & 7:1-8:17
[153] Exh E, Tr. at 10:10-11.

Ahmed is willing to talk with him.[154]  Ahmed agreed to talk.[155]

At his deposition, Ahmed explained that the basis for his false arrest claim was that he was told he that he had to go with officers to the station because "it's the law."[156] His after the fact assertion is insufficient to establish false arrest in the face of the recorded interactions showing he was under no obligations to go with them or talk to him.[157]

But even if there were a seizure, it was not unreasonable.  Ahmed told the officers he witnessed the shooting.[158]  This was a serious incident being investigated as a crime and the officers needed to talk to all the witnesses.

### B. NIED

Alaska allows an individual who suffers severe emotional distress to pursue a claim for negligent infliction of emotional distress where the individual is a bystander who directly witnessed the physical injury.[159]  Assuming for purposes of this motion only that Ahmed meets the narrow criteria to pursue an NIED claim, he cannot succeed on his NIED action because there is no negligence.[160]

---

[154] Exh. F, Tr. at 5:6-8 (asking Ahmed if it is okay to "take a few minutes here and talk to me").
[155] Exh. F, Tr. at 5:11.
[156] Exh. D, Tr. at 50:3-4.  At his deposition he acknowledged that he did not know who it was that told him this.  Exh. D, Tr. 50:7-9, 52:14-18, 106:9-11.  At the end he only "guessed" that it was the officer who transported him. Exh. D, Tr. 106:18.  But plaintiff needs to identify an individual in order to hold that individual or the department under a theory of respondeat superior responsible.
[157] No such statement was made on the recordings. *See* Exhibit E.
[158] Exh. D, Tr. 48:7-17.
[159] His own testimony was that his view was blocked by the cars. Exh. D, Depo. Tr. 47:6-10; Exh. F, Tr. at 22:5-8.  However, it is undisputed that he was present on the scene.
[160] *See* discussion in Argument Section III.C.

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 24 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 24 of 29

## C. IIED

To establish a prima facie case of IIED, plaintiff must prove that defendant "through extreme or outrageous conduct . . . intentionally or recklessly cause[d] severe emotional distress or bodily harm to another."[161]  The court must make a threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant a claim of IIED.[162]

Plaintiff lacks evidence to make the threshold showing that any conduct by the officers was extreme or outrageous.  The officers were acting in the course and scope of their employment as law enforcement officers, responding to multiple calls about a man with a gun.  The events were fast moving.  Officers were forced to make a split-second decision to use deadly force when Bishar pulled the gun and pointed it in their direction. Thus, for the same reasons there is insufficient basis for a substantive due process claim under the Fourteenth Amendment, there is inadequate basis for an IIED claim.

Plaintiff also lacks sufficient evidence to make a threshold showing regarding the severity of his emotional distress.  Plaintiff must establish "distress of such substantial quality or enduring quantity that no reasonable person in a civilized society should be expected to endure it."[163]  Municipal Defendants are not suggesting that an individual does not suffers anguish and distress due to the death of a sibling.  But Ahmed has not provided any evidence to support a finding that his suffering has been so severe as to

---

[161] *Odom v. Fairbanks Memorial Hosp.*, 999 P.2d 123, 133 (Alaska 2000) (quoting *Richardson v. Fairbanks N. Star Borough*, 705 P.2d 454, 456 (Alaska 1985)).
[162] *Id.*

meet the threshold for IIED claim.  Ahmed provided no counseling or medical records, did not identify any expert witnesses related to Ahmed's condition, provide any other information that could demonstrates the scope or extent of the mental anguish Ahmed claims to have suffered.  Accordingly, Ahmed cannot recover on his IIED claim.

## V.    Damages

Municipal Defendants believe that summary judgment is appropriate on all of the claims for the reasons articulated in this motion.[164]    However, if the court believes any of the claims avoid summary judgment, the court should limit the damages available to plaintiffs as discussed below.

### A.  Wrongful Death

#### 1.  No Accumulation to the Estate.

It is well established that the appropriate measure of damages to the estate is "the amount the decedent would have probably saved had []he not died prematurely."[165]   In Bishar's case that figure is likely zero.

Plaintiff has provided no evidence to demonstrate there would have been any accumulation during Bishar's lifetime had he not died on April 1, 2019.  Bishar was not employed at the time of his death.[166] And his earnings information shows he did not have much income in the years leading up to the incident.   In 2018, Bishar earned just $6,686. No earnings information has been provided for 2017.

---

[163] *State v. Carpenter*, 171 P.3d 41, 59 (Alaska 2007) (citing *Fyffe v. Wright*, 93 P.3d 444, 456 (Alaska 2004)).
[164] Argument, Sections I-III above.
[165] *Kulawik v. ERA Jet Alaska,* 820 P.2d 627, 631 (Alaska 1991).

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 26 of 29

Case 3:21-cv-00076-SLG   Document 34   Filed 10/05/22   Page 26 of 29

In fact, the testimony of Ahmed and Idiris show that Ahmed generally lacked much earning potential. Ahmed explained, his brother was "struggling mentally."[167] And his mother confirmed his difficulty in obtaining employment, explaining that when he got a job he could not keep it for more than two days.[168] Since they will not be able to establish that he would have any earnings, they certainly cannot establish there would be any accumulation to the estate.

### 2. No Loss of Financial Support.

Both Idiris and Ahmed seek damages under wrongful death statute.[169] AS 9.55.080 allows for the recovery of loss of support. However, in *Millo v. Delius*, this court expressly held that in order for someone other than a surviving spouse or minor child to recover under the wrongful death statute they must establish dependency such that the death will result in financial loss.[170]

Plaintiffs have provided no evidence that Mr. Hassan's death will result in financial loss to them. Deposition testimony establishes that Mr. Hassan provided no support to either his mother or his brother. Indeed, Ahmed stated that his brother did not give him money.[171] On the contrary, their testimony shows that *they* provided support to *him* – housing, food and money.[172] Thus neither can establish dependency.

---

[166] Exh. D, Ahmed Depo Tr. 16:16-20.
[167] Exh D, Tr. at 25:5-25.
[168] Deposition of Bilay Idiris, Tr. at 11:18-20, attached hereto as Exhibit I.
[169] Complaint (Dkt. 1) at p. 38 (Prayer for Relief ¶ A).
[170] 872 F.Supp.2d at 878-879.
[171] Exh. D, Tr. at 20:16-18.

### 3. No Documentation of Funeral and Burial Expenses

Plaintiffs also seek to recover loss for funeral and burial expenses. However, they have not provided sufficient evidence to allow a jury to award these damages.

The precise amount of the expenses is not adequately supported. At the deposition Ahmed said the funeral expenses were approximately $3,000 and there may have been other costs.[173] He indicated he would provide the receipts.[174] However, discovery has since closed and he has not yet provided any documentation concerning the burial expenses or any other related expense. Given that the documents exist but plaintiffs chose not to provide any documentary evidence, they should be precluded from recovering these expenses.

### CONCLUSION

For the foregoing reasons, Municipal Defendants are entitled to summary judgment on the claims asserted in the Complaint. If anything remains, the damages should be limited for the reasons stated.

---

[172] Exh. D, Depo Tr. 20:22-23, 28:24-29:5; Exh. I, Idiris Depo. at 13:13-16.
[173] Exh. D, Depo Tr. 88:24-89:7
[174] Exh D, Depo Tr. at 89:8-16.

Respectfully submitted this 5th day of October, 2022.

BLAIR M. CHRISTENSEN
Acting Municipal Attorney

By:    /s/Pamela D. Weiss
        Municipal Attorney's Office
        P.O. Box 196650
        Anchorage, Alaska 99519-6650
        Phone: (907) 343-4545
        Fax: (907) 343-4550
        E-mail: uslit@muni.org
        Alaska Bar No. 0305022

Certificate of Service
The undersigned hereby certifies that on 10/05/22, a
true and correct copy of the foregoing was served by
electronic means through the CM/ECF system.

Rex Butler

/s/ Cathi Russell
Cathi Russell, Legal Secretary
Municipal Attorney's Office

Municipal Defendants' Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076 JWS
Page 29 of 29