Pamela D. Weiss
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
Email: uslit@muni.org

Attorney for Defendants
Municipality of Anchorage, Matthew Hall,
Nathan Lewis, Brett Eggiman

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE ESTATE OF BISHAR ALI HASSAN, AHMED HASSAN, and BILAY ADEN IDIRIS,<br><br>Plaintiffs,<br><br>vs.<br><br>MUNICIPALITY AND CITY OF ANCHORAGE, MATHEW HALL, NATHAN LEWIS, BRETT EGGIMAN, and DOES 1-2 INCLUSIVE,<br><br>Defendants. | Case No. 3:21-cv-00076-SLG |

## REPLY IN SUPPORT OF MUNICIPAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO PLAINTIFFS' OPPOSITION

Defendants Municipality of Anchorage, and Officers Matthew Hall, Nathan Lewis and Brett Eggiman (collectively "Municipal Defendants") hereby submit this reply in support of their Motion for Summary Judgment (Dkt. 34) and in response to Plaintiffs' opposition (Dkt. 37).

Numerous issues were raised in Municipal Defendants' Motion, to which plaintiffs offer no response. These include:

- That Officers Eggiman and Lewis are entitled to qualified immunity;
- That plaintiffs have not stated a claim for 14th Amendment Substantive Due Process;
- That Ahmed Hassan has not stated a claim for Intentional Infliction of Emotional Distress;
- That the proper measure of damages is the accumulation to the estate;
- That neither Ahmed Hassan nor Bilay Idiris can establish dependency and, therefore, may not recover damages for loss of support.

Because they made no argument in opposition to these, Plaintiffs concede that granted summary judgment should be granted as to those issues.[1]

On the remaining issues presented in the motion Municipal Defendants are entitled to summary judgment because Plaintiffs do not demonstrate there are any material factual disputes. Although Plaintiffs claims there are seven items that are disputed (Opposition (Dkt. 37) at 2-4,[2] the items they list are merely conclusory or unsupported allegations. These do not create a genuine issue of fact for a jury. Because there are no issues for trial and Municipal Defendants are entitled to judgment as a matter of law, the motion at Dkt. 34 should be granted.

---

[1] *M.S. v. County of Ventura*, 2017 WL 10434015 at *24 n. 20 (C.D. Cal. March 7, 2017); *Mendoza v. City of Peoria*, 2015 WL 13239816 at *4 (D. Ariz. July 31, 2015).
[2] Municipal Defendants will address these items as they relate to individual claims.

I.  **<u>Officer Hall is Entitled to Qualified Immunity on the Excessive Force Claim.</u>**[3]

Plaintiffs do not present any evidence that establishes there is a dispute as to the material facts concerning the use of force and its reasonableness. Instead, they simply assert that it is premature to decide qualified immunity. Opp. (Dkt. 37) at 13. But they do so based on a case concerning a motion to dismiss based on the pleadings.[4] In this case, discovery is closed. Thus, it is the appropriate time to consider qualified immunity in the summary judgment motion.

**A. There are No Disputes of Fact Relating to Use of Force.**

The bulk of Plaintiff's discussion of the excessive force claim is a detailed discussion of the decision in *Nehad v. Browder*[5]; in fact, the Opposition devotes over five pages to reciting in great detail the arguments and analysis in that case. Opp. (Dkt. 37) at 17-22. But that case does not inform the decision on the motion before this court. In Nehad, the court found that summary judgment was not appropriate because there were disputed facts, both as to what the suspect (Nehad) was doing and what the officer (Browder) said.[6] Here, there are no such disputes.

As seen in the video,[7] the event occurs in the span of just a few seconds. As the officers bring their vehicles to a stop, Bishar turns around and walks towards the

---

[3] Plaintiffs do not argue that there are issues of fact concerning Officer Eggiman's and Officer Lewis's use of force. For that reason, this section is addressed solely as if the only remaining defendant is Officer Hall. Nevertheless, the arguments apply with equal force to all three individual officers.
[4] Opp. (Dkt. 37) at 13 (citing *Keates v. Koile,* 883 F.3d 1228, 1234 (9th Cir. 2018)).
[5] 929 F.3d 1125 (9th Cir. 2019).
[6] *Id.* at 1131.
[7] Exh. B-2.

Reply ISO Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076-SLG
Page 3 of 17
Case 3:21-cv-00076-SLG   Document 46   Filed 12/07/22   Page 3 of 17

officers.[8] Over the next second or two, Officer Hall twice directs Bishar to "stop right there." Exh. B-2 at 1:05-1:06; Exh. C at 39. But Bishar does not stop. Exh. C-1, Slides 225-255. Bishar then removes a gun from his hip area and points the muzzle in the direction of the officers with his finger near the trigger.[9]

Plaintiffs do not dispute that Bishar took the actions as described in the motion or above. The entirety of their opposition is instead just seven separate statements, all of which are conclusory or unsupported and therefore insufficient to overcome summary judgment.

### 1. Credibility.

Plaintiffs assert that summary judgment is not appropriate because Officer Hall "is not credible." Opp. (Dkt. 37) at 16. Plaintiffs' basis for this astounding assertion is simply the existence of two separate statements made by Officer Hall. The first was Officer Hall's answer to an investigator's question about how he expected the call to play out before he knew what would happen.[10] The second statement was his response to a question posed by Plaintiffs' counsel at the deposition that asked why he sought to make contact with Bishar.[11] There is nothing inconsistent or incompatible between these statements. They do not respond to the same question and do not even address the same subject. Thus neither supports Plaintiffs' attempt to impugn the character of Officer Hall.

---

[8] Exh. C-1, Slides 93 & 143.
[9] Exh. C at 40; Exh. C-1, Slides 269, 274, 285, 290.
[10] Exh. 1 at 1.
[11] Exh. 2 at 33.

Reply ISO Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076-SLG
Page 4 of 17
Case 3:21-cv-00076-SLG   Document 46   Filed 12/07/22   Page 4 of 17

In any event, either independently or together, the two statements are not relevant to the excessive force claim. Use of force is evaluated under an objective standard that considers the facts and circumstances at the time the force was used, the most important being "whether the suspect posed an 'immediate threat to the safety of the officers or others'".[12] Here, the undisputed evidence shows there were numerous calls to APD dispatch about a man with a gun, some of whom reported he was waving it around.[13] When officers attempted to contact Bishar, he ignored commands to stop, continued to walk towards them, and then drew a gun from his waistband and pointed the muzzle towards the officers.[14] In view of these undisputed facts, Officer Hall's use of force was objectively reasonable.[15]

### 2. Actual Danger.

Despite evidence to the contrary, Plaintiffs next claim that the officers' use of force was not justified because "Bishar did not pose a danger to anyone." Opp. (Dkt. 37) at 22. But the question is not whether, in retrospect, there was actual danger. The proper inquiry is whether an officer could reasonably believe there was imminent danger of bodily harm to him/herself or others.[16]

---

[12] *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citing *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005)).
[13] Exh A at 4-11 (CAD).
[14] Exh. C & C-1; Exh. B-2.
[15] Exh. G at 13.
[16] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The actions depicted in the video shows that the officers' belief that Bishar posed an imminent danger was reasonable.[17] And Mr. Patrick's uncontradicted expert opinion explains at great lengths why the officers' belief that there was an imminent threat that justified deadly force was reasonable.[18] Plaintiffs point to no evidence to the contrary and therefore there is no issue for a jury to decide.

### 3. Poor Judgment, Lack of Preparation or Training

Without reference to any facts, Plaintiffs assert that the officers' "poor judgment and lack of prepar[ation] or training caused the Municipality to act unreasonably and thus created the danger" Opp. (Dkt 37). at 22. This single statement does not sufficiently explain the relevance of this consideration in an excessive force claim. Nor does it identify any facts that would be introduced to establish such a claim.

### 4. Severity of the Crime.

Plaintiffs argue that deadly force was not justified because the "severity of the alleged crime was low." Opp. (Dkt. 37) at 22. But Plaintiffs are referring to possible crime based on the information reported to 911. This argument, however, entirely disregards the conduct that Bishar engaged in when he pointed the gun at the officers after he drew it from his waistband. His actions at that time constituted assault.[19]

### 5. Evasion of Law Enforcement.

---

[17] Exh. B-2.
[18] Exh. G at 10-20.
[19] AS 11.41.220 (a)(1).

Reply ISO Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076-SLG
Page 6 of 17

Plaintiffs also claim that officers unreasonably used deadly force because Bishar was not evading law enforcement. Opp. (Dkt. 37) at 23.[20] But in doing so, plaintiffs place disproportionate weight on a single non-exclusive factor.[21]

The court considers the totality of the circumstances and "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*."[22] In this case, the video clearly shows that when the officers stopped their vehicles, Bishar turned towards them and walked towards the vehicles, did not obey commands to "stop," and then pulled out a gun and pointed it in their direction.[23] Plaintiffs ignore that these actions could constitute active resistance.

### 6. Warnings.

Plaintiffs argue that a jury could conclude that it was unreasonable not to warn Bishar that deadly force would be employed if he did not follow commands. Opp. (Dkt. 37) at 23. The case law tells us that warnings should be given "whenever practicable."[24] But the absence of a warning does mean that the use of deadly force is unreasonable.[25]

The undisputed evidence shows it was not practicable for Officer Hall to give a warning. There was less than one second from the time the gun was visible to the first shot. From the time the gun cleared Bishar's hip area to the first shot was barely more than half a second. Exh. C at 40-41; Exh. C-1 at Slides 290, 310-311. Had Officer Hall

---

[20] The question is actually whether a suspect is "*actively resisting* arrest or evading law enforcement." *Graham v. Connor*, 490 U.S. at 396 (emphasis added).
[21] *Bryan v. MacPherson,* 630 F.3d at 826.
[22] *Id.*
[23] Exh. B-2.
[24] *Gonzales v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014).
[25] *Id.* at 796.

taken the time to give a warning, it would have placed the officers at unacceptable and unreasonable jeopardy of death or serious bodily injury and therefore would be contrary to police practice.[26] Plaintiffs do not identify any evidence that could support a different conclusion.

### 7. Additional Shots.

Finally, plaintiffs argues that it was "unreasonable for Officer Hall to continue shooting even after the gun fell out [of] Bishar['s] hand." Opp. (Dkt. 37) at 23. Plaintiffs' argument applies the incorrect standard because it relies on 20/20 hindsight with the benefit of technology that was able to split the video into millisecond frames so that we now see precisely when the gun fell from Bishar's hand relative to when the shots were fired.[27]

But when we apply the objective standard as the law requires, the result is clear. The undisputed facts show that Officer Hall's conduct was reasonable. The events took place in a matter of seconds; indeed, all the shots were fired in a period of 2.4 seconds. Exh. C at 24. The uncontroverted evidence shows that for an officer to recognize that a threat has ended, decide to stop shooting and implement that decision, additional shots may be fired. Exh. G at 19. It is simply not possible for individuals to perceive and react instantaneously.[28] Plaintiffs have no evidence that a reasonable officer would have been

---

[26] Exh. G at 13-15.
[27] Exhs. C & C-1.
[28] Plaintiffs point to a single statement by Officer Hall that he was aware his shots were making contact with Bishar. Mr. Patrick explains, however, that the mere fact that the individual is hit does not end a threat since incapacitation takes time. Exh. G at 13. Thus, Officer Hall's statement does not establish that additional shots were unreasonable.

Reply ISO Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076-SLG
Page 8 of 17

able to stop shooting any sooner than these officers did given the short amount of time and Mr. Hassan's constant movements.

### B. The Law Was Not Clearly Established.

Further, the officers are entitled to qualified immunity because they were not on notice that their use of force would have violated Bishar's constitutional rights.

Plaintiffs do not acknowledge at all that case law would have put the officers on notice that conduct was, in fact, reasonable. The court has explicitly held that "when someone points a gun at an officer, the Constitution undoubtedly entitles the officer to respond with deadly force." [29] Plaintiffs have not identified any other case law that could have put the officers on notice that shooting Bishar in the circumstances that existed would have violated a clearly established right. Accordingly, the law was not clearly established for purposes of qualified immunity.

Nor have Plaintiffs identified any case that would have put the officers on notice that failing to stop shooting in less than 2.4 seconds would have violated a clearly established right. On the contrary, case law provides that where an officer is justified in firing to end a threat, "they need not stop until the threat has ended."[30] The courts have found firing many shots in a matter of seconds can be reasonable.[31] Given this, the officers would have reason to believe that their conduct was constitutionally appropriate.

---

[29] *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (citation omitted).
[30] *Plumhoff v. Rickard*, 572 U.S. 765, 777-78 (2014).
[31] *See T.D.P v. City of Oakland,* 2019 WL 913840 at *2 (N.D, Cal. Feb. 24, 2019 (four officers shot a total of 14 times over 3.6 seconds); *Wilkinson v. Torres,* 610 F.3d 546, 548 (9th Cir. 2010) (11 shots fired)

## II. Reasonable Suspicion.

Plaintiffs devote much of their Opposition to the issue of reasonable suspicion. Opp. (Dkt. 37) at 5-11 & 14-15. From the Opposition, it appears Plaintiffs are trying to connect a lack of reasonable suspicion to the use of force.

Even if Plaintiffs could show that the officers lacked reasonable suspicion, that would not establish excessive force.[32] As explained in *Mendez,* "[a] different Fourth Amendment violation cannot transform a later, reasonable use of force into an unreasonable seizure."[33] Moreover, given the decision in that case, Plaintiffs would be entitled to at most nominal damages for any such violation.[34]

In fact, the officers had reasonable suspicion for the reasons explained in the motion (Dkt. 34 at 18-20). The cases cited in the motion demonstrate that calls from the concerned citizens provided reasonable suspicion to permit the officers to contact Bishar. There is no requirement that the firearm be displayed in a "threatening" manner or that people be alarmed in order to constitute reasonable suspicion as plaintiffs suggest. Opp. (Dkt. 37) at 9. In any event, the officers would not have been on notice that making contact with Bishar under the circumstances would violate a clearly established right.

Meanwhile, the cases cited by plaintiffs are clearly distinguishable. *U.S. v. Brown*[35] would not tell officers that an individual reported to be brandishing a weapon

---

[32] *See County of Los Angeles County, California v. Mendez,* 581 U.S. 420 (2017) (rejecting Ninth Circuit's provocation rule).
[33] *Id.* at 1544.
[34] *Id.* at 1545 (noting, without considering, that District Court bench trial awarded only nominal damages for warrantless entry claim since "act of pointing BB gun" by plaintiff decedent was a superseding cause as far as damages from shooting).
[35] 925 F.3d 1150 (9th Cir. 2019).

Reply ISO Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076-SLG
Page 10 of 17

cannot be contacted by law enforcement. In that case, officers did not have a reliable tip of reported criminal activity. Officers received only information from an anonymous source that the man "has a gun," which is presumptively lawful.[36]

Likewise, *Liberal v. Estrada*[37] would not have put officers on notice that they lacked reasonable suspicion to contact Bishar. The court in *Liberal* did not make any findings regarding reasonable suspicion. The court simply affirmed the denial of qualified immunity based on the existence of a dispute of fact concerning the officer's perception that the driver's windows were rolled up and visibly tinted.[38]

### III. Plaintiff's *Monell* Claims.

Municipal Defendants are also entitled to summary judgment on Plaintiffs' *Monell* claims notwithstanding the arguments raised in Opposition. Plaintiffs are correct that an informal practice or custom may suffice (Opp. (Dkt. 37) at 24) but that does not mean they can proceed on their claim without any evidence at all.

A bare assertion that there is a "custom" or that the city failed to enforce a policy is insufficient.[39] The case law is clear that "plaintiffs must allege a specific municipal policy to sustain a 1983 claim."[40]

Plaintiffs suggest that Officer Hall's statement in the post-shooting investigation about what he anticipated might happen as he was going to the call constitutes a practice or custom for purposes of their *Monell* claim. Opp. (Dkt. 37) at 25. But a *Monell* claim

---

[36] *Id.* at 1154.
[37] 632 F.3d 1064 (9th Cir. 2011).
[38] *Id.* at 1075.
[39] *James v. City of Henderson*, 2022 WL 2307067 at *3 (D. Nev. June 27, 2022) (citation omitted).
[40] *Id.* at *3.

based on custom or practice must be based on practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."[41] Officer Hall's response to investigators about the facts of the day does not establish an informal practice or custom. It was simply a statement of his subjective believe about a particular situation. Regardless, the statement does not show that his beliefs are of such duration, frequency or consistency among officers to constitute a practice or custom for purposes of *Monell*.

Separately, Plaintiffs now, for the very first time in their Opposition, claim that they are asserting a *Monell* claim based on failure to train. Opp. (Dkt. 37) at 3, 4 & 25. There are limited circumstances where allegation of "failure to train" can be the basis for municipal liability under § 1983. Only where failure to train evidences "deliberate indifference to the rights of its inhabitants" can shortcomings in training be considered policies or customs.[42] Thus, there can be liability under *Monell* only if there is a constitutional violation and only where the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights" *Id*.

In order to succeed on a *Monell* claim for failure to train, plaintiff must demonstrate "(1) specific training deficiencies and (2) either a pattern of constitutional violations that policymakers were aware of that training is necessary to avoid constitutional violation."[43] "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have

---

[41] *Id.* at *2.
[42] *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).
[43] *James* 2022 WL 2307067 at *4 (citing *City of Canton*, 489 U.S. 378).

Reply ISO Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076-SLG
Page 12 of 17

resulted from factors other than a faulty training program."[44] This higher burden is necessary to avoid *de facto* respondeat superior liability, which was expressly rejected in *Monell*.[45]

Plaintiffs do not identify any admissible evidence that would be introduced to meet this standard. Plaintiffs' claim that there is an outstanding discovery dispute is insufficient. Opp. (Dkt. 37) at 25-26. Were there a discovery dispute that was critical to this motion, Plaintiffs would have filed a motion with the court both concerning such dispute and to extend the time for their opposition under Rule 56(f).

In fact, there is no outstanding discovery dispute. Plaintiffs served a series of discovery requests on or about July 29, 2022, to which Municipal Defendants provided timely responses. Plaintiffs did send emails to Municipal Defendants claiming the objections were improper and the parties conferred both in email and telephonically. But Plaintiffs took no further steps. Under the Scheduling and Planning Order (Dkt. 11), motions under the discovery rules were due no later than 14 days after the close of discovery. Thus, the time for any motions has long passed and there is no more to be done.

In any event, the written documentation requested in Plaintiffs' discovery requests would not be sufficient to support Plaintiffs' failure to train claim even if it existed. Plaintiffs would still not be able to produce evidence that the officers were inadequately trained, that MOA has a faulty training program, or that any unspecified deficiencies

---

[44] *City of Canton*, 489 U.S. at 390-91.
[45] *Id.* at 392.

"actually caused" Bishar's injury.[46] They asked only for written training materials of the individual, nothing more.[47]

## IV. Ahmed's False Arrest Claim[48]

There are no disputes of fact concerning what was said during Ahmed's contact with APD officers from the point the recordings begin.[49] The only additional fact that plaintiffs have identified – and which Municipal Defendants acknowledged in the motion - is Ahmed's assertion that that he was told he had to go with APD.[50]

Assuming he was told that, the false arrest claim fails in light of subsequent statements. An officer reported to dispatch that he was with Ahmed at the scene at 18:18:31.[51] It was reported to dispatch within 8 minutes, at 18:25:57, that an officer was *en route* to APD with Ahmed.[52] The recording of contact with Ahmed begins before Ahmed enters the police vehicle, which would be some time around 18:25:57. And that

---

[46] *Id.* at 391.

[47] *See* Exh. 11 (RFP Nos. 2-23).

[48] The Complaint asserted only a state law claim of false arrest as to Ahmed. (Complaint (Dkt. 1) (Tenth Claim for relief asserts "False Arrest/False Imprisonment (Under Alaska Law)".) The opposition, however, for the first time suggests he is raising a 4th Amendment claim. Opp. at 11-12. However, no individual officer has been named or identified as committing the false arrest, which would be necessary to assert a claim under §1983.

[49] Exh. E at 2..

[50] Exh. D, Tr. 50:3-4. The remaining "facts" too are not facts but arguments unsupported by the only evidence in the record. Plaintiffs claim that Ahmed was not allowed to leave after the interview. But the undisputed evidence shows that APD transported Ahmed to his mothers' house. Exh. F, Tr. at 50:19-21. The Opposition also claims that Ahmed was not allowed to speak to friends or family. Opp. at 12. Plaintiffs point to no admissible evidence that could show this. In fact, the audios demonstrate that the officer assisted Ahmed to call friends because his phone battery was not charged and tried to get a charger for his phone. Similarly, the argument that Ahmed was "kept in the dark" about his brother is belied by the transcript of the audio, which shows that the officers told him about his brother's condition. Exh. F, Tr. 4: 19-25; Tr. 48:20-50:7.

[51] Exh. A at 7.

[52] Exh. A at 7.

Reply ISO Motion for Summary Judgment
*Estate of Hassan v. MOA, et al.*; Case No. 3:21-cv-00076-SLG
Page 14 of 17
Case 3:21-cv-00076-SLG   Document 46   Filed 12/07/22   Page 14 of 17

recording begins with the officer's explicit statement to Ahmed that he is not under arrest.[53]  Thus, even if an officer told Ahmed he had to go to APD to be interviewed immediately upon seeing him,[54] he was told less than 8 minutes later he was <u>not</u> under arrest.  At least from that point forward he was no longer restrained for purposes of this claim.

In any event, the officers who contacted and transported Ahmed would be entitled to qualified immunity and the Municipality would be entitled to derivative immunity.  Plaintiff has not identified any case that would have put officers on notice that transporting Ahmed to the station after telling him explicitly that he was not under arrest would constitute false arrest.

**V.    State Law Tort Claims.**

Plaintiffs' Opposition does not address the substance of the motion with regard to the state law claims.  Plaintiffs argue that the court cannot consider qualified immunity at the summary judgment stage.  Opp. (Dkt. 37) at 15, 27.  But it is without question that the court does that all the time.

Plaintiffs also argue the state law claims are not "ripe" for summary judgment (Opp. 29) (citing *Green v. City and County of San Francisco*[55]).  Municipal Defendants do not understand this argument and are therefore unable to meaningfully respond.  In *Green*, the court reversed the trial court's grant of summary judgment on state law claims

---

[53] Exh. E at 2.
[54] However, it *was* reasonable for officers to detain Ahmed for a brief period until they could speak with him since he had reported that he witnessed the events.  AS 12.50.201.
[55] 751 F.3d 1039 (9th Cir. 2014).

because there were disputes of fact.[56] So it is not clear how this case impacts the present one.

Ultimately, Plaintiffs fail to identify any facts that would support their various state law claims or demonstrate that there are any disputes of fact that must be decided by a jury. Accordingly, summary judgment is appropriate.

## VI. NIED.

Plaintiffs devote their opposition to establishing that Ahmed met the bystander criteria. Opp. (Dkt. 37) at 28-29. But Plaintiffs failed entirely to focus on what is needed to defeat summary judgment – to identify facts that could support the negligence claim. Plaintiffs do not reference any evidence. Since Plaintiffs have provided no meaningful opposition to the Motion on this point, Plaintiffs have conceded that summary judgment is appropriate.

## VII. Damages.

Without reference to any evidence whatsoever, Plaintiffs claim that "whether Bishar Hassan could have or would have earned more is a question of fact for a jury." (Opp. at 30). But Plaintiffs do not point to any evidence that they would introduce to demonstrate that Bishar would have earned enough for there to be any accumulation to the estate.[57] Accordingly, there is nothing for a jury to determine.

---

[56] *Id.* at 1053.
[57] Nor do Plaintiffs provide any evidence of funeral and burial expenses.

**CONCLUSION**

Municipal Defendants met their burden in the motion to demonstrate that there are no genuine issues of material fact. The burden then shifted to Plaintiffs to establish that genuine issues of material fact exist. However, plaintiffs have failed to do so in any way. Given the undisputed facts and the existing case law, the Municipal Defendants are entitled to summary judgment on the various claims asserted by Plaintiffs.

Respectfully submitted this 7th day of December, 2022

                                     BLAIR M. CHRISTENSEN
                                     Acting Municipal Attorney

                                By:    s/Pamela D. Weiss
                                           Municipal Attorney's Office
                                           P.O. Box 196650
                                           Anchorage, Alaska 99519-6650
                                           Phone: (907) 343-4545
                                           Fax: (907) 343-4550
                                           E-mail: uslit@muni.org
                                           Alaska Bar No. 0305022

Certificate of Service
The undersigned hereby certifies that on 12/07/22, a true and correct copy of the foregoing was served by electronic means through the CM/ECF system.

Rex Butler

/s/ Cathi Russell
Cathi Russell, Legal Secretary
Municipal Attorney's Office