Rex Lamont Butler
745 W. 4th Avenue, Suite 300
Anchorage, AK 99501
Tel: (907)272-1497
Email: rexbutlercalendar@gmail.com
**Attorney for Plaintiffs**

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| THE ESTATE OF BISHAR ALI HASSAN, | ) |
| | ) |
| AHMED HASSAN AND BILAY ADEN IDIRIS, | ) |
| PLAINTIFFS, | ) |
| Vs. | ) |
| | ) |
| MUNICIPALITY AND CITY OF ANCHORAGE, | ) |
| | ) |
| MATTHEW HALL, NATHAN LEWIS, BRETT | ) |
| | ) |
| EGGIMAN, AND DOES 1-20, INCLUSIVE, | ) |
| DEFENDANTS. | ) **3:21-cv-00076-SLG** |
| _____ | ) |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE DISCOVERY**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, the Estate of Bishar Hassan, Ahmed Hassan and Bilay Aden Idris ("Plaintiffs") respectfully submits this Memorandum in support of its motion to compel The Municipality of Anchorage ("Defendants") to comply with Plaintiffs' discovery requests. This motion is necessary because Defendants provided evasive answers which under Civil Procedure Rule 37(a)(4) is equivalent to a failure to disclose, answer or respond to plaintiffs' discovery request.

1

**BACKGROUND**

On July 28th, 2022, plaintiffs deposed defendants, Anchorage Police Department (APD) officers, Matthew Hall (Hall), Nathan Lewis (Lewis) and Brett Eggiman (Eggiman). Hall's answers at the deposition caused plaintiffs' counsel to believe that he was either being evasive or did not receive training on how to respond to calls involving a person suspected of being armed or a person suspected of being mentally ill and armed. Because Hall would not give clear answers, plaintiffs' counsel made a discovery request for Hall's (and Lewis' and Eggiman's) training records, if any, on how to respond to calls involving an armed suspect or a person suspected of being mentally ill and armed.

**Plaintiffs' Discovery Requests**

At approximately 1:30 p.m. on July 28th, 2022, plaintiffs made a discovery request by email as was the norm. (See Exhibit A). The goals of Plaintiffs' discovery request were to establish that: (1) defendants had not been trained or were insufficiently or improperly trained on how to respond to calls involving a person suspected of being armed or a person suspected of being mentally ill and armed; and (2) defendants had not been trained on how not to violate citizens constitutional rights under the state and federal constitutions.

More than 30 days after receiving plaintiffs' discovery request, on August 29th, 2022, the defendants responded to the request. In a nutshell, the defendants took the position that the request was (1) **vague** and **ambiguous** with respect to the phrase "call involving armed suspected" and "suspected of being mentally ill". (2) The request was **burdensome** because **it would require someone at APD to locate** and **identify all**

2

**materials** that exist with respect to trainings attended by the individual officers and then review/read all of the materials to determine if any relate to or reference responding to calls involving a mentally ill individual or someone suspected of being mentally ill. **Such a task that is expected could take an inordinate amount of time, perhaps up to 100 hours**." (See Exhibit A, page 5 of 13 Request No. 8, page 6 of 13 Request No. 10, page 7 of 13 Request No. 12, page 8-9 of 13 Request No. 14, page 10 of 13 Request No. 18, page 10 - 11 of 13 Request No. 20, page 12 of 13 Request No. 23).

Approximately 10 days after receiving the defendants' response to plaintiffs' discovery request, plaintiffs emailed defendants informing them of the need to confer because their response was not in compliance with rulings of the 9th Circuit Courts. (See Exhibit B). In an email dated September 12th, 2022, (See Exhibit C) defendants asked plaintiffs to identify the responses that were not in compliance with the 9th Circuit case law. In response, on September 15th, 2022, plaintiffs informed defendants that **without factual information regarding how they maintain, organize, index and identify their records, and the format in which the records are stored (whether it is electronically searchable) the Court or plaintiffs cannot assess whether the request is burdensome**. (See Exhibit D).

On September 20th, 2022, in an email, defendants stated that the problem is not with the MOA's organization or filing but the plaintiffs' request that was on a very narrow and specific subject that could be addressed directly or indirectly -through any training. As such, APD would have to review every single piece of written material in connection with each training section or module an individual officer has attended. (See Exhibit E). This

3

response seems to contradict the defendants' position to the effect that plaintiffs' request was vague and ambiguous (See Exhibit A)]. In a direct response to the defendants', plaintiffs spelled out the problem with the defendants' response to their discovery request. First, it provided conclusions without supporting facts. For example, defendant simply states that it was going to take 100 hours to search through the materials to find answers. However, defendants did not provide details to support the 100 hours claim -such as how voluminous the training records were; the format in which the record are stored; whether the training records could be electronically or digitally searched using key words and how the records are maintained/organized or indexed. Plaintiffs informed defendants that under 9th Circuit law, a search of 813 files and 25,000 paper files was considered not burdensome. (See Exhibit F).

Contrary to the defendants' earlier email stating that the problem is not with their (MOA's) organization or filing (See Exhibit E), their response to plaintiffs' email, Exhibit F, established that the problem was with the MOA's organization and filing among other things. In response to plaintiffs' email, Exhibit F, defendants stated that the first layer of difficulty is pulling all the records that would be stored in a separate file under the Academy or in other location. **Some of the material may have to be tracked down** and **assuming it can be done**, it will simply take some time. (See Exhibit G).

Based on Exhibit G, it can be concluded that the defendants: (1) do not know where the training records are stored; (2) do not know whether the training records can be tracked down, and (3) do not how voluminous the training records are. Consequently, it can also reasonably be concluded that the defendants' response to plaintiffs' discovery request

4

regarding training records was not made in good faith given their lack of basic knowledge about the same records.

As required by this court, plaintiffs reached out to the defendants' counsel to confer on the ongoing discovery issue. The earliest the parties were able to confer was October 12th, 2022. Plaintiffs' counsel, his law clerk and defendants' counsel conferred by phone.

Plaintiffs' counsel attempted to get information on why it was burdensome to produce the training records sought. However, defendants' answers did not reasonably establish that it was burdensome or provide reliable information for plaintiffs to independently assess the claim of burdensomeness. Defendants were unable to tell plaintiffs how voluminous the records were, the format in which the records were maintained, and what efforts, if any, had been made to find the records. The defendants promised to send plaintiffs' counsel outlines and summaries of defendants training records that may help resolve the issue. There was an understanding that perhaps outlines, and summaries of the defendants training records would help get to the bottom of the matter because defendants were of the position that plaintiffs incorrectly assume the manner in which the training is presented. Also, defendants' counsel stated that the plaintiffs had preserved their right to file motions to compel discovery.

After conferring, plaintiffs reviewed the materials previously discovered by defendants. Those materials included outlines of training records of each individual officer in the discovery produced under the protective order. Plaintiffs believed the defendants were using the same evasive tactics employed all along. Defendants avoided explaining why the training records are not electronically or digitally searchable and failed to establish

5

that they had made any effort to search their records for the requested materials. It is difficult to believe that the defendants were unable to locate such training records because it's reasonable to assume that every police academy includes training on how to respond to calls involving an armed suspect -especially in an open carry state like Alaska.

Defendants sent an email to plaintiffs after they had conferred. (See Exhibit H). In response, counsel reminded Defendants' sending the summaries or outlines would not sufficient. Under 9th circuit case law, defendants were required to provide an affidavit establishing: (1) effort made to look for discovery requested by plaintiff; (2) how voluminous the materials were; (3) the format in which the materials were held/stored; (4) the filing/storage system used to preserve the requested discovery; (5) the searchability of the records; (6) whether the discovery is in a central location; (7) method used to locate requested discovery; (8) whether the discovery was indexed; (9) how long it would take to locate and review the requested discovery and, (10) cost of producing requested discovery. Plaintiffs included relevant case law. (See Exhibit I).

Defendants' response suggested that they were unwilling to comply with the requirements under 9th Circuit caselaw (See Exhibit J). Based on the last paragraph of the Defendants' response, plaintiffs believed that Defendants would review their records to meet the requirements under 9th Circuit caselaw cited in Exhibit J. Thus, responding to the email would be redundant.

On November 28, 2022, the plaintiffs filed an opposition to Defendant's Motion for Summary Judgment in which they informed the court that there is a discovery dispute. In

response, rather than being forthcoming with the court, the defendants alleged that there was no discovery dispute and that plaintiffs had abandoned their pursuit of discovery.

Plaintiffs submit that the defendants' Assertion is wrong. Plaintiffs have never abandoned their pursuit of the defendants' training records. Plaintiffs believed that defendants were searching for the request discovery as required under 9th circuit law and that it was taking defendants some time to locate the records since they alleged that they did not know where the records were located. Also, plaintiffs believed that it would take defendants hours to search the records after they located them. (See Exhibit G -in general).

Based on Defendants' reply, Plaintiffs are forced to file this motion to compel discovery.

## II. ARGUMENT

## DEFENDANTS' REFUSAL TO PRODUCE RECORDS MOST RELEVANT TO PLAINTIFFS' SUIT IN AN ATTEMPT TO OBSTRUCT DISCOVERY AND SHOULD NOT BE TOLERATED BY THIS COURT

What courts do not tolerate is attempts to obstruct discovery through objections or evasive responses which lack a good faith basis. Marti v. Baires, 2012 U.S. Dist. LEXIS 77962, 2012 WL 2029720 (E.D. Cal.) citing Marchand v. Mercy Med. Ctr., 22 F.3d 933, 938 (9th Cir. 1994)). In considering a motion to compel, Rule 37(a)(4) directs that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed.R.Civ.P. 37(a)(4). In opposing discovery on grounds of burdensomeness, the objecting party **is required to demonstrate** that the time and expense

involved in responding to the requested discovery will, in fact, be unduly burdensome. A mere statement that complying with the discovery request will require "numerous man hours," is not sufficient. In considering the burden imposed on a party in responding to discovery, the Court should also consider whether the burden is a result of the party's lack of an adequate filing system or method for locating requested information. **Without factual information regarding how Defendant maintains, organizes, indexes and identifies its policy records, the Court cannot make such an assessment**. Residential Contructors v. Ace Prop. 2006 U.S. Dist. LEXIS 80403 * | 2006 WL 3149362 at *26. [*Internal quotations omitted*].

Defendants' refusal to produce responsive documents and information relating to those training records seems to be based on the bizarre notion that discovery is limited to what they say or believe can easily be found. Also, defendants apparently believe that they do not have to comply with 9th Circuit law that requires them to establish why it would be burdensome for them to provide the requested discovery. The defendants seem to believe that they are not required to establish (1) what effort they have made to look for discovery requested by plaintiff; (2) the volume of the materials they claim to be burdensome to search; (3) the format in which the materials were held/stored; (4) the filing/storage system used to preserve the requested discovery; (5) the searchability of the materials they claim is burdensome to search; (6) whether the material are in a centralized location; (7) method used to locate requested discovery; (8) whether the discovery is indexed; (9) how long it would take to locate and review the requested discovery and, (10) cost of producing requested discovery.

8

Put another way, the defendants appear to believe that neither the court nor the plaintiffs have the right to independently assess whether the discovery request is burdensome. Defendants' position suggests that they believe that the court and plaintiffs are to simply accept the unsupported conclusion that the request is burdensome.

Accordingly, Plaintiff asks the Court for an order compelling Defendants to comply with Plaintiffs' written discovery requests.

# DEFENDANTS' CONCLUSION THAT PLAINTIFFS ABANDONED THEIR DISCOVERY REQUEST IS UNFOUNDED

Based on the last paragraph in the defendants' own email dated October 24, 2022, it is clear a response was only necessary for the purpose of determining the approach to be taken regarding resolution of the discovery matter at issue. Nothing from the plaintiffs suggested that they had abandoned their pursuit of the discovery.

Defendants' assertion that Plaintiffs abandoned the discovery request is part of their scheme to avoid establishing that such training records do not exist because the officers were never trained or were insufficiently trained on how to responds to armed persons suspected of suffering from mental health issues. This fact is backed by the history of defendants' evasive responses to plaintiffs' discovery requests. For example, Defendants claimed that the phrases were vague and ambiguous: (1) "training on responding to a call involving an armed individual" [See Exhibit G Response to Request No. 4, at page 3 of 13]; (2) "armed and emotionally upset individual" [See Exhibit G Response to Request No. 7, at page 5 of 13]; (3) "suspected of being mentally ill" [See Exhibit G Response to

9

Request No. 8, at page 5 of 13]; (4) "mentally ill individual or an individual suspected of being mentally ill" [See Exhibit G Response to Request No. 9, at page 6 of 13]; (5) "armed mentally ill individual" [See Exhibit G Response to Request No.10, at page 6 of 13]; (6) "training on responding to a call involving an armed individual suspected of being mentally ill" [See Exhibit G Response to Request No. 12, at page 7 of 13]; (7) "how to approach an armed individual" [See Exhibit G Response to Request No. 14, at page 8 of 13] and, (8) "how to approach a reportedly armed individual" [See Exhibit G Response to Request No. 18, at page 10 of 13].

The declaration in the Plaintiffs' opposition to Defendants' Motion for Summary Judgement is proof positive that the plaintiffs never abandoned the discovery claim as asserted by defendants.

## THE DEFENDANTS' SYSTEMATIC BAD FAITH IS MANIFESTED IN THEIR FRIVOLOUS RESPONSE TO DISCOVERY REQUESTS AND IN THEIR ATTEMPT TO MISLEAD THE COURT

Even though the defendants are well aware that there is a well-documented discovery dispute, in their reply to plaintiffs' opposition to defendants' Motion for Summary Judgement, the defendants have alleged that there is no discovery dispute. Also, to cause the court to believe that plaintiffs have no right to discovery, defendants argued that the deadline for motion to compel discovery is long overdue. (See docket 46 page 13). Defendants made this declaration well aware that they had assured plaintiffs that their right to compel discovery had been reserved even though the deadline was past due. The fact

10

Case 3:21-cv-00076-SLG    Document 47    Filed 01/04/23    Page 10 of 15

that the defendants continued to discuss ways of trying to resolve this discovery dispute in late October 2022 speaks to the defendants' position that plaintiffs were entitled to that discovery and had the right to compel such discovery since defendants were not in compliance with the discovery rules. Otherwise, there would be no reason for the defendants to make any attempts at trying to resolve a discovery issue to which they believed plaintiffs have no recourse. This attempt to mislead the court speaks to the defendants' bad faith and the epitome of defendants' grand scheme to evade their discovery obligation. They deliberately acted like they were going to do something while time was running. Now, they want the court to believe Plaintiffs abandoned their mission.

The defendants' frivolous response to plaintiffs' discovery request as being "vague and ambiguous", failure to comply with 9th circuit law when claiming that plaintiffs' discovery request is burdensome, the defendants' and the failure to show any effort made whatsoever to look for the requested discovery as of late October 2022, overwhelmingly establishes the defendants' evasiveness and a deliberate lack of good faith. But more importantly it is well established that a failure to object to a discovery request within the time required constitutes a waiver of any objection.

Accordingly, the defendants have no basis to argue against plaintiffs continued pursuit of the highly relevant discovery.

Rule 37(a)(4) directs that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed.R.Civ.P. 37(a)(4). Here, Defendants failed to respond to plaintiffs' discovery request.

## DEFENDANTS WAIVED ANY OBJECTIONS THEY HAD, IF ANY, TO PLAINTIFFS' DISCOVERY REQUEST

It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection. Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981). Because Plaintiffs failed to respond to the discovery request in 30 days, as required by Fed. R. Civ. P. 33(b), the Court construes this as a waiver of all objections. See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992). Bennett v. Homesite Ins. Co., 2022 U.S. Dist. LEXIS 185704, at *

When Plaintiffs asked to confer, Defendants did not argue that discovery was closed or that the motion to compel discovery was past. They did not raise the issue while the parties were conferring, after the parties conferred or even in the email sent to plaintiffs on October 24th, 2022. Most notably, Defendants did not raise the issue when Plaintiffs informed them that they were not in compliance with 9th Circuit case law.

## EVEN IF THE DEADLINE TO FILE THE MOTIONS HAS PAST, THERE IS GOOD CAUSE TO ACCEPT PLAINTIFFS' MOTION TO COMPEL.

In Bennett v. Homesite Ins. Co, the court stated that "the Court also finds good cause to accept the filing of the Motion to Compel after the deadline passed. See Fed. R. Civ. P. 16(b)(4); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)' s "good cause" standard primarily considers the diligence of the party seeking the amendment.")." Bennett v. Homesite Ins. Co., 2022 U.S. Dist. LEXIS 185704*6. "The Court has independently reviewed the record, which shows sufficient diligence to allow

the late filing. The deadline for discovery motions was set on July 27, 2022. (Dkt. No. 36.) But because the discovery was served on July 5, 2022 and the response was due August 4, 2022, it would have been impossible for Defendant to have filed this Motion by the deadline. And while Defendant could potentially have served the discovery request earlier, the Court is satisfied that it moved diligently to seek the information once the deposition of the landlord concluded in late June. It is true that Defendant could have moved more quickly to file the Motion after Plaintiffs failed to respond. But Defendants timely raised the issue after Plaintiff failed to respond and then filed the Motion shortly after Plaintiffs served their response on August 29, 2022. On this record, Defendant pursued the Motion with sufficient diligence to alter the deadline and accept this late-filed discovery motion." Id., At 6-7. "The Court finds good cause to accept the late-filed Motion to Compel, and agrees with Defendant that the information sought is relevant and discoverable. Plaintiffs have not identified any valid basis on which to refuse production of the bank records from January 1, 2021 to the present. Accordingly, the Court GRANTS the Motion and ORDERS Plaintiffs to produce these bank records or sign releases allowing Defendant to obtain the records from the bank within 7 days of entry of this Order." Id., at *9.

Likewise, here, plaintiffs were diligent. (1) Plaintiffs made the discovery request as soon they learned of relevant information from Officer Hall's deposition. (2) Upon receiving responses that were not in compliance with the 9th Circuit rules, plaintiffs informed the defendants that their response was not consistent with 9th Circuit law. (3) Plaintiffs provided the defendants with caselaw establishing why their response was not in

13

compliance with 9th circuit law. (4) Plaintiffs did not wait for the defendants to provide pending protected evidence which was to be released only upon a court order. (5) Any delay that occurred was because the Plaintiffs believed that the defendants were acting in good faith. However, that myth was put to rest by the defendants declaring that there was no discovery issue and that the deadline to compel discovery was long passed even though defendants continued to confer and cause plaintiffs to believe that they would produce said discovery.

Defendants should not be allowed to come to the court with unclean hands and argue that the deadline for plaintiffs to file a motion to compel has passed even though they deliberately failed to act in good faith.

**DEFENDANTS' FAILURE TO COMPLY WITH RULE 37(a)(4) WARRANTS ADDITIONAL TIME TO USE THE DEFENDANTS' RESPONSE ONCE RECEIVED TO SUPPLEMENT THEIR FILINGS BEFORE THE COURT OR MAKE NEW FILINGS.**

For the reasons stated above, Defendants have improperly deprived Plaintiffs of relevant discovery. Plaintiffs ask this Court to order Defendants to respond to plaintiffs' discovery request in compliance with 9th circuit law within 15 days.

Plaintiffs are entitled to the benefit of such responses. Therefore, Plaintiffs respectfully requests that the Court allow an additional 30 days for plaintiffs to amend any filings with the benefit of the most relevant materials once Plaintiffs receives the improperly withheld discovery.

## II. CONCLUSION

For the reasons stated above, Plaintiffs respectfully requests that the Court reject Defendants' attempts to unduly limit the scope of discovery in this case, grant their Motion to Compel, and enter an order requiring Defendants to (1) respond fully to Plaintiffs' discovery requests within 15 days of the Courts order. Finally, Plaintiff requests that the Court grant a 45day extension of the time period for discovery, so that Plaintiffs will have 30 days to review the discovery and act accordingly.

RESPECTFULLY SUBMITTED this 4th day of January 2023.

/s/ Rex L. Butler
REX LAMONT BUTLER
Attorney for Plaintiffs

**Certificate of service**

I hereby certify that this document was served upon defendants' attorney Pamela Weiss, through ECF Filing on 1/4/23.

/s/Rex L. Butler
Rex Lamont Butler

15

Case 3:21-cv-00076-SLG   Document 47   Filed 01/04/23   Page 15 of 15