# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

THE ESTATE OF BISHAR ALI
HASSAN, et al.,

        Plaintiffs,

        v.

MUNICIPALITY AND CITY OF
ANCHORAGE, et al.,

        Defendants.

Case No. 3:21-cv-00076-SLG

## ORDER RE ALL PENDING MOTIONS

Before the Court are five pending motions. First, Defendants Municipality of Anchorage and Anchorage Police Officers Matthew Hall, Nathan Lewis, and Brett Eggiman (collectively "Municipal Defendants") filed a Motion for Summary Judgment at Docket 34. Plaintiffs Estate of Bishar Ali Hassan, Ahmed Hassan, and Bilay Aden Idiris (collectively, "Plaintiffs") responded in opposition at Docket 37, and Municipal Defendants replied at Docket 46. Second, Plaintiffs filed a Cross Motion for Summary Judgment at Docket 40.[1] Third, at Docket 42, Municipal Defendants filed a Motion to Strike Plaintiffs' Cross Motion for Summary Judgment (Docket 37 and Docket 40). Fourth, Plaintiffs filed a Motion to Compel Defendants

---

[1] Note that Plaintiffs' opposition to Municipal Defendants' motion for summary judgment at Docket 37 and Plaintiffs' cross motion for summary judgment at Docket 40 are identical, other than the inclusion of the phrase "Plaintiffs incorporate by reference filing at docket 37" at the top of the cross motion at Docket 40. To streamline the citations, the Court will only cite to Docket 40.

to Produce Discovery at Docket 47. Fifth, at Docket 48, Municipal Defendants filed a Motion to Strike Plaintiffs' Untimely Motion to Compel (Docket 47). Plaintiffs responded in opposition at Docket 49, to which Municipal Defendants replied at Docket 50. Oral argument was not requested and was not necessary to the Court's determination of these motions.

## BACKGROUND

This case concerns the death of Bishar Ali Hassan, who was shot to death by Anchorage police officers on April 1, 2019. According to the call log, the events occurred over a span of less than ten minutes. Beginning around 5:45 p.m. that evening, Anchorage Police Department ("APD") dispatch started receiving numerous calls reporting that a Black adult male was brandishing a handgun near the Walmart on A Street in Anchorage.[2]

Over the course of the next three minutes, callers provided a fractured account of Mr. Hassan's movements. One caller saw him "pull[] a handgun out of his jacket" and another said he pulled the gun from "inside his pants or jacket." One caller observed him "walk . . . in traffic" and another saw him "walking . . . on a street waving the gun on the sidewalk." Callers described what he was doing with his gun in various ways: "pointing it down," "carrying it," "waving [the gun]

---

[2] Docket 34-1 at 4–5. It is not entirely clear from the record how many 911 calls APD received, but it appears as though APD received approximately six calls. Docket 34-1 at 4–5.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 2 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 2 of 34

around," "brandishing a handgun," and "not pointing it at anyone and [kept] putting it in his pocket."[3]

Four minutes after the first call was received, a caller observed Mr. Hassan "tuck[] the gun into the front right pants or front right jacket" and board a bus. A minute later, a caller said that they "never saw [him] fire the weapon, never heard any gun shots" and did not see him "interact with anyone." Two minutes after Mr. Hassan got on the bus, he was observed getting off the bus. Six minutes after the first call was received the police shot their firearms at Mr. Hassan.[4]

While callers spoke with APD dispatch, Officers Hall, Lewis, and Eggiman were each on the way to the scene.[5] After Mr. Hassan got off the bus, Officer Hall drove his vehicle up on the sidewalk behind him.[6] Officer Lewis pulled up behind Officer Hall and Officer Eggiman parked on the side of the road, next to the curb, and in line with Officer Hall's car.[7] The in-car video (ICV) recording systems from all three cars record what happened next, but the interaction took place in a matter of seconds, making it difficult to see the sequence of events.[8] A forensic video

---

[3] Docket 34-1 at 4.

[4] Docket 34-1 at 5.

[5] Docket 34-1 at 13–14, 23–25, 36.

[6] Docket 34-1 at 26.

[7] Docket 34-1 at 14, 37.

[8] Docket 36, Ex. B-1, B-2, B-3.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 3 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 3 of 34

analyst isolated each frame, taken milliseconds apart, allowing the Court to determine the sequence of events.[9]

Officer Hall turned on his emergency lights as he pulled up behind Mr. Hassan, who was facing the opposite direction and walking away from the police vehicles.[10] Mr. Hassan then turned around and started walking toward the vehicles.[11] Officer Hall said, "Hey, stop right there man, stop right there," but Mr. Hassan continued walking towards him and started reaching for his gun one second later.[12] Mr. Hassan made contact with his gun and then Officer Hall started reaching for his own gun.[13] Then Mr. Hassan started raising his gun, with his finger near the trigger guard, toward Officer Hall.[14] Officer Hall appeared to begin issuing another command, saying "step," but did not finish his sentence.[15] At 17:52:43.030, the barrel of Mr. Hassan's gun was directed toward Officer Hall.[16] Less than a second later, at 17:52:43.197, Officer Hall fired the first shot.[17] Mr.

---

[9] Docket 36, Ex. C-1.

[10] Docket 36, Ex. C-1, Slide 37 (17:52:33.954).

[11] Docket 36, Ex. C-1, Slide 50 (Mr. Hassan starts turning around at 17:52:34.388), Slide 124 (Mr. Hassan starts walking toward the police vehicles).

[12] Docket 36, Ex. C-1, Slide 224 (17:52:40.294), Slide 268 (17:52:41.795).

[13] Docket 36, Ex. C-1, Slide 274 (Mr. Hassan makes contact with his gun at 17:52:41.995); slide 284 (Officer Hall starts reaching for his gun at 17:52:42.296).

[14] Docket 36, Ex. C-1, Slide 290–Slide 291 (17:52:42.529–17:52:42.563).

[15] Docket 36, Ex. C-1, Slide 292 (17:52:42.596).

[16] Docket 36, Ex. C-1, Slide 305 (17:52:43.030).

[17] Docket 36, Ex. C-1, Slide 310 (17:52:43.197).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 4 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 4 of 34

Hassan began to drop his gun less than a second after that, at 17:52:43.363, and he fell to the ground.[18]

According to the forensic video analysis, "[a]t the time of the first shot, Hassan was holding his gun directly toward Hall, with his gun hand outstretched and the muzzle directed toward Hall."[19] The three officers fired a total of 13 shots in 2.4 seconds.[20] Several of these shots did not strike Mr. Hassan.[21]

After the officers stopped firing at Mr. Hassan, he lay on the ground and did not attempt to stand, but he raised his head up off the ground a few times and moved his arms around for approximately 50 seconds.[22] His gun was on the ground approximately an arm's length away from him.[23] He disregarded several commands to roll onto his stomach and appeared to try to speak with the officers, but his words were not picked up on the ICVs.[24] When he stopped moving, officers approached him and began providing medical assistance.[25] When Officer

---

[18] Docket 36, Ex. C-1, Slide 314 (17:52.43.363). Note that the slide said that "Hall begins to drop gun," but it is clear from the image that it is Mr. Hassan who begins dropping his gun, not Officer Hall.

[19] Docket 34-3 at 41.

[20] Docket 34-3 at 27, 46.

[21] Docket 34-3 at 42–43.

[22] Docket 36, Ex. B-1 at 1:09–1:59.

[23] Docket 34-1 at 16.

[24] Docket 36, Ex. B-1 at 1:09–1:59.

[25] Docket 36, Ex. B-1 at 2:04 onward.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 5 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 5 of 34

Eggiman picked up Mr. Hassan's gun off of the ground, he realized from the weight of it that it was not a real gun.[26]

Mr. Hassan's brother, Ahmed Hassan, arrived on the scene shortly before the shooting occurred.[27] Ahmed Hassan explained that he got a call from a cab driver telling him that his brother was mad and needed to be picked up, so Ahmed Hassan drove to the Wal-Mart, but when he arrived, his brother was already on the bus. Ahmed Hassan pulled up to a bus stop at A Street and 16th to wait for his brother.[28] Ahmed Hassan watched the three police cars pull up behind his brother and saw his brother turn towards them.[29] He watched the police officers surround his brother and then shoot at him.[30] He acknowledged that he could not see everything that happened, however, because vehicles and people were blocking his view.[31] After the shooting occurred, officers approached him and he told them that Mr. Hassan is his brother and he had seen what had happened.[32] According to Ahmed Hassan's deposition, he wanted to go to the hospital with his brother, but the officers told him that he had to go with them to the station because "it's the

---

[26] Docket 34-1 at 16 ("[S]o I picked up the gun and once I felt the weight of it, that's when I realized that it was not a real . . . Beretta.").

[27] Docket 34-5 at 7–11.

[28] Docket 34-7 at 5.

[29] Docket 34-7 at 6.

[30] Docket 34-7 at 7.

[31] Docket 34-5 at 11–12; Docket 34-7 at 7.

[32] Docket 34-5 at 12.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 6 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 6 of 34

law."[33]  Ahmed Hassan also testified that the officers conducted a pat down of him and checked his pockets.[34]

Ahmed Hassan's interaction with the officer who transported him to the station was recorded.[35]  The officer's alleged statement that Ahmed Hassan had to go with him to the station because it was the law does not appear in the transcript of the recording.  To the contrary, at the beginning of the recording, the officer said "You're not under arrest or anything like that.  I'm just going to do a quick pat (indiscernible) see if you have any weapons on you."[36]  While Ahmed Hassan waited at the station to be interviewed, an officer helped him make phone calls and offered him food and water.  The officer repeatedly stated that they had several witnesses to interview, and they would interview him as soon as they could.[37] While he waited, Ahmed Hassan asked, "I want to know my brother's intuition [sic], if he's alive or if he's dead.  We want to get to his body if he's alive–he's dead.  If he's alive I want to know it."[38]  However, he does not directly ask to leave the police station to go to the hospital.

---

[33] Docket 34-5 at 13–14.

[34] Docket 34-5 at 14.

[35] Docket 34-6.

[36] Docket 34-6 at 2.

[37] Docket 34-6 at 3.  It is unclear why the officers did not prioritize interviewing Ahmed Hassan so that he could get to the hospital to be with his brother.

[38] Docket 34-6 at 3.

The interview of Ahmed Hassan by Detective Foraker was also recorded.[39] At the beginning of the interview, the detective asked, "are you okay to take a few minutes here and talk to me?" and Ahmed Hassan responded, "yeah."[40] At one point, the officer asked "[i]s your plan to go to the hospital?" and Ahmed Hassan replied, "I want to go [sic] hospital and my mom, too, both."[41] Near the end of the interview, the officer informed Ahmed Hassan that his brother had died.[42] The officers brought Ahmed Hassan to his mother's house to speak with her about her son's death.[43]

The Estate of Bishar Ali Hassan, Ahmed Hassan, and their mother, Bilay Aden Idiris, filed suit against the Municipality of Anchorage, the Anchorage Police Department, and Officers Matthew Hall, Nathan Lewis, and Brett Eggiman.[44] The complaint alleges 11 claims.[45] The first two claims for relief allege that Defendants violated Mr. Hassan's Fourth Amendment rights by detaining and arresting him and using excessive force against him.[46] The third claim alleges that Defendants violated Ahmed Hassan and Bilay Aden Idiris's Fourteenth Amendment rights by

---

[39] Docket 34-7 at 1.

[40] Docket 34-7 at 2.

[41] Docket 34-7 at 10.

[42] Docket 34-7 at 13.

[43] Docket 34-6 at 5.

[44] Docket 1 at 1–2.

[45] Docket 1 at 13–37, ¶¶ 64–155.

[46] Docket 1 at 13–17, ¶¶ 64–80.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 8 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 8 of 34

way of an "unwarranted state interference in Plaintiff's familial relationship with . . . . DECEDENT."[47]  The fourth and fifth claims allege that the Municipality is liable for maintaining an unconstitutional custom or policy and failure to train.[48]  The next three claims are state law claims on behalf of Mr. Hassan alleging false arrest/false imprisonment, battery, and negligence.[49]  The final three claims are state law claims on behalf of Ahmed Hassan for false arrest/false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress.[50]

## JURISDICTION

Plaintiffs brought this suit pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 seeking redress for alleged violations of Plaintiffs' federal constitutional rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments.[51]  The Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.  The Court declines to exercise its supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as discussed in Section VI of this order.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary

---

[47] Docket 1 at 17–19, ¶¶ 81–92.

[48] Docket 1 at 19–25, ¶¶ 93–115.

[49] Docket 1 at 25–32, ¶¶ 116–135.

[50] Docket 1 at 32–37, ¶¶ 136–155.

[51] Docket 1 at 2, ¶ 3.  According to the complaint, this action is also brought pursuant to 42 U.S.C. § 1988, which provides for attorney's fees in proceedings to enforce sections 1983 and 1985.  Section 1988, however, does not provide a cause of action.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 9 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 9 of 34

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case."[52] If the movant meets this burden, the non-moving party must "designate 'specific facts showing that there is a genuine issue for trial.'"[53] The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[54] The Ninth Circuit Court of Appeals has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."[55]

When evaluating the record for the purposes of deciding a motion for summary judgment, a court must "view the facts and draw reasonable inferences" in the light most favorable to the non-moving party.[56] However, when a party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes

---

[52] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[53] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[54] *Liberty Lobby, Inc.*, 477 U.S. at 248-49 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[55] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)) (citing *Johnson v. Washington Metro. Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir.1989)); *see also Oakley, Inc. v. McWilliams*, 584 Fed. App'x 528, 529 (9th Cir. 2014) ("[A party's] self-serving and uncorroborated declarations . . . are insufficient to avert summary judgment.").

[56] *Id.* at 378 (citations omitted).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 10 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 10 of 34

of ruling on a motion for summary judgment."[57]  Specifically, when a party files a videotape with the Court, the veracity and relevance of which is not questioned by any party, a court should view the facts in the light depicted by the videotape.[58]

When as here the parties file cross motions for summary judgment, "[e]ach motion must be considered on its own merits."[59]  This requires a court to review the evidence submitted by both parties in support of their motions for summary judgment before ruling on either motion.[60]

## DISCUSSION

As a threshold matter, the Court must decide whether to consider Plaintiffs' cross motion for summary judgment at Docket 40.  Municipal Defendants moved to strike the cross motion for summary judgment as untimely pursuant to Federal Rule of Civil Procedure 12(f).[61]  Indeed, pursuant to the Scheduling and Planning Order at Docket 11, the deadline for dispositive motions in this matter was August 29, 2022.[62]  Municipal Defendants filed an unopposed motion seeking an extension

---

[57] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[58] *See id*. at 380-81 ("The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").

[59] *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted).

[60] *Id.*

[61] Docket 42 at 2.

[62] Dispositive motions were to be served and filed in accordance with District of Alaska Local Rule 16.1(c), which provides that "[d]ispositive motions must be filed not later than 30 days after the close of discovery."  Docket 11 at 7.  Discovery closed in this case on July 29, 2022.  Docket 11 at 4.  Accordingly, dispositive motions were due 30 days later, on August 29, 2022.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al*.
Order Re All Pending Motions
Page 11 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 11 of 34

of that deadline until October 5, 2022, which the Court granted.[63]  On October 5,

2022, Municipal Defendants filed their motion for summary judgment.[64]  Plaintiffs

did not file a cross motion for summary judgment until November 14, 2022.[65]

Plaintiffs' motion was untimely.  Although the Court does not excuse or condone

this violation, the Court has considered the arguments raised in Plaintiffs' untimely

cross motion and is entering summary judgment in favor of Municipal Defendants

for the reasons discussed herein.[66]  Municipal Defendants' motion to strike at

Docket 42 is therefore denied.

## I.    Qualified Immunity

When, as here, a plaintiff files suit against government actors under § 1983

for the alleged violation of the plaintiff's federal constitutional rights, the Court must

consider whether those government actors are entitled to immunity from suit.  The

doctrine of qualified immunity shields government actors from civil liability under §

1983 if "their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."[67]  Government officials

are not entitled to qualified immunity on summary judgment if (1) the facts taken in

---

[63] Docket 28; Docket 29.

[64] Docket 34.

[65] Docket 37.

[66] *See Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 842 n.2 (9th Cir. 1994) (finding district court did not abuse discretion by considering untimely motion for summary judgment).

[67] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

the light most favorable to the plaintiff show that the officials' conduct violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation.[68]  Qualified immunity applies unless both prongs of the inquiry are satisfied.[69]

A court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."[70]  However, it "is often beneficial" to analyze the first prong first and then the second prong because this process "promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable."[71]  Bearing this in mind, the Court begins with the first prong of the qualified immunity analysis for the following three claims of unconstitutional conduct.

## II. Fourth Amendment Excessive Force Claim

Plaintiffs contend that the responding officers used excessive force against Mr. Hassan when they used deadly force against him in violation of his Fourth Amendment rights.[72]  Municipal Defendants respond that the officers are all

---

[68] *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

[69] *See Pearson*, 555 U.S. at 232.

[70] *Id*. at 236.

[71] *Id*.

[72] Docket 1 at 15–17, ¶¶ 71–80.

entitled to qualified immunity.[73]

When evaluating a Fourth Amendment claim of excessive force, courts consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them."[74] This "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."[75] Courts consider "whatever specific factors may be appropriate in a particular case."[76] These factors include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; [and] the threat reasonably perceived by the officer."[77] Additional relevant factors may "include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed."[78]

"The 'reasonableness' of a particular use of force must be judged from the

---

[73] Docket 34 at 9–17.

[74] *Graham v. Connor*, 490 U.S. 386, 397 (1989).

[75] *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

[76] *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994).

[77] *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

[78] *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 14 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 14 of 34

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[79]   "Only information known to the officer at the time the conduct occurred is relevant."[80]   And while the availability of alternative measures to respond to a situation may be a relevant consideration in some cases, officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."[81]

In this case, Municipal Defendants have filed three videotapes with the Court, the veracity and relevance of which is not questioned by Plaintiffs, so the Court views the facts in the light depicted by the videotapes.[82]   The forensic video analysis shows that when officers arrived on the scene, Mr. Hassan turned around and started walking towards them.[83]   Officer Hall's command to "stop right there" went unheeded.[84]   Instead, Mr. Hassan pulled his gun from his waistband and

---

[79] *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

[80] *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

[81] *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

[82] *See Harris*, 550 U.S. at 380-81 ("The Court of Appeals . . . should have viewed the facts in the light depicted by the videotape.").

[83] Docket 36, Ex. C-1, Slide 37 (17:52:33.954) (Officer Hall turns on his lights as he pulls up behind Mr. Hassan), Slide 50 (Mr. Hassan starts turning around at 17:52:34.388), Slide 124 (Mr. Hassan starts walking toward the police vehicles).

[84] Docket 36, Ex. C-1, Slide 224 (17:52:40.294) (Officer Hall commands Mr. Hassan to "stop right there"), Slide 268 (17:52:41.795) (Mr. Hassan continues advancing towards Officer Hall and starts to reach for his gun).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 15 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 15 of 34

pointed the muzzle in the direction of Officer Hall with his finger near the trigger.[85]
It was not until Mr. Hassan pointed his gun at Officer Hall that the first shot is fired
at Mr. Hassan.[86]  Plaintiffs do not dispute these facts.

"When an individual points his gun 'in the officers' direction,' the Constitution
undoubtedly entitles the officer to respond with deadly force."[87]  The videotapes
show that Mr. Hassan posed an immediate threat to the safety of the police officers
and to others because he pointed his gun at the officers immediately before they
deployed deadly force against him.[88]  Viewing the facts in the light depicted by the
videotapes, the officers did not violate Mr. Hassan's Fourth Amendment rights
because no reasonable jury could find that the officers' use of force in these
circumstances was unreasonable.  Officers Hall, Lewis, and Eggiman are entitled
to qualified immunity.

Plaintiffs respond that there are material issues of fact in dispute that

---

[85] Docket 36, Ex. C-1, Slide 290–Slide 305 (17:52:42.529–17:52:43.030) (Mr. Hassan points his gun at Officer Hall).

[86] Docket 36, Ex. C-1, Slide 310 (17:52:43.197) (Mr. Hassan has pointed his gun at Officer Hall and the first shot is fired); *see also* Docket 34-3 at 41 (forensic video analyst concludes "[a]t the time of the first shot, Hassan was holding his gun directly toward Hall, with his gun hand outstretched and the muzzle directed toward Hall").

[87] *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (citing *Long v. City & County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007)); *see also Henrich*, 39 F.3d at 914, 916 (holding no constitutional violation because decedent held a long gun and pointed it at the officers).

[88] *See Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8–9); *Lombardo*, 141 S. Ct. at 2241 (quoting *Kingsley*, 576 U.S. at 397) (holding that courts should consider "the severity of the security problem at issue" and the "threat reasonably perceived by the officer"); *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) ("Of all of these factors, the 'most important' one is 'whether the suspect posed an immediate threat to the safety of the officers or others.'" (quoting *George*, 736 F.3d at 838)).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 16 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 16 of 34

preclude summary judgment. Specifically, Plaintiffs contend that there are material issues of fact as to Officer Hall's credibility.[89] A disputed fact is only material, however, when the resolution of that fact might affect the outcome of the suit under the governing law.[90] In this case, the Court relies on the facts as depicted in the videotapes in accordance with the Supreme Court's directive in *Scott v. Harris*.[91] The Court need not and does not rely on Officer Hall's description of the events that day to conclude that no reasonable jury could find a constitutional violation when the officers directed deadly force at Mr. Hassan. Accordingly, Officer Hall's credibility does not affect the outcome of the excessive force claim and is not a genuine dispute of material fact that would preclude summary judgment.

Plaintiffs also maintain that the responding officers' conduct was objectively unreasonable because Mr. Hassan "did not pose a danger to anyone," he was "not evading law enforcement," and "there was no crime in progress when he was seized by the police."[92] The videotapes contradict each of these factual assertions and the Court will not rely on this "visible fiction."[93] In the moment before Mr. Hassan was shot, he posed an immediate threat to the safety of the responding officers because he was pointing his gun at them. The Ninth Circuit has explained

---

[89] Docket 40 at 2–3, 22.

[90] *Liberty Lobby, Inc.*, 477 U.S. at 248.

[91] *See Harris*, 550 U.S. at 380-81.

[92] Docket 40 at 22.

[93] *Harris*, 550 U.S. at 380-81.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 17 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 17 of 34

that the "most important" factor is "the level of threat [the decedent] posed immediately before his death."[94]  To the extent that Plaintiffs urge this Court to look beyond the moment when Mr. Hassan raised his gun towards the officers and rely on Mr. Hassan's conduct in the minutes before the shooting, the Court declines to do so.  The Court finds that no reasonable jury could conclude that Mr. Hassan did not pose an immediate threat to the safety of the responding officers right before he was shot.

Similarly, Plaintiffs insist that "[it] was unreasonable not to warn Bishar Hassan that deadly force would be employed if he did not follow commands because the evidence (video) shows no indication of violent intent."[95]  The videotapes contradict Plaintiffs' assertion that "there was no indication of violent intent" because Mr. Hassan pointed his weapon at Officer Hall right before he was shot.[96]  Moreover, the videotapes show that less than a minute elapsed between the moment when Officer Hall turned on his lights behind Mr. Hassan and the moment when Mr. Hassan pointed his weapon at Officer Hall.[97]  The Court finds

---

[94] *Est. of Aguirre v. County of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022) (quoting *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)).

[95] Docket 40 at 23.

[96] Docket 36, Ex. C-1, Slide 310 (17:52:43.197) (Mr. Hassan has pointed his gun at Officer Hall and the first shot is fired); *see also* Docket 34-3 at 41 (forensic video analyst concludes "[a]t the time of the first shot, Hassan was holding his gun directly toward Hall, with his gun hand outstretched and the muzzle directed toward Hall").

[97] Docket 36, Ex. C-1, Slide 37 (17:52:33.954) (Officer Hall turns on his lights as he pulls up behind Mr. Hassan), Slide 290–Slide 305 (17:52:42.529–17:52:43.030) (Mr. Hassan points his gun at Officer Hall).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 18 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 18 of 34

that no reasonable jury could conclude that it was feasible for the responding officers to provide a warning.[98]

Plaintiffs also contend that the responding officers used excessive force because they continued to shoot Mr. Hassan after his gun had fallen out of his hand.[99]  The three officers fired a total of 13 shots in 2.4 seconds.[100]  In this regard, the Court is mindful of the Ninth Circuit's directive that "[a]ll determinations of unreasonable force 'must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"[101]  In this case, the responding officers recognized in just 2.4 seconds that the threat that Mr. Hassan created when he pointed his weapon at them had ended.  The Court finds that no reasonable jury could conclude that the officers' conduct in those seconds was unreasonable.

In sum, the responding officers' conduct was objectively reasonable

---

[98] *See also Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) (en banc) ("In general, we have recognized that an officer must give a warning before using deadly force 'whenever practicable.'" (quoting *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997))); *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) ("[P]olice officers normally provide such warnings where feasible, even when the force is less than deadly" and "failure to give such warning is a factor to consider," especially if "there was 'ample time to give that order or warning and no reason whatsoever not to do so.'" (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001))).

[99] Docket 40 at 2–3, 23.

[100] Docket 34-3 at 27, 46.

[101] *Henrich*, 39 F.3d at 914 (quoting *Graham*, 490 U.S. at 396-97).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 19 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 19 of 34

because Mr. Hassan posed an immediate threat to the safety of the officers when he pulled his gun out of his waistband and pointed it at the officers. No reasonable jury could conclude otherwise. The Court accordingly grants summary judgment to the Municipal Defendants on the Fourth Amendment excessive force claim.

### III. Fourth Amendment Unlawful Seizure

Plaintiffs contend that Mr. Hassan was subject to an unlawful seizure in violation of the Fourth Amendment because the responding officers did not have reasonable suspicion to perform an investigatory stop.[102] More specifically, Plaintiffs allege that "the Municipality did not have reliable evidence of a crime being afoot" because "none of the callers provided information establishing concealed criminal activity."[103]

This claim is brought pursuant to *Terry v. Ohio*, which "permits limited police intrusions on a person's freedom of movement and personal security when an officer's suspicion falls short of the 'probable cause' required to execute an arrest or a 'full' search."[104] "To initiate a brief stop to investigate potential criminal activity, a stop that does not rise to the level of an arrest, an officer must have reasonable suspicion to believe 'criminal activity may be afoot.'"[105] The facts of this case are

---

[102] Docket 1 at 13–14, ¶¶ 64–70; Docket 40 at 5–11.

[103] Docket 40 at 10.

[104] *Thomas v. Dillard*, 818 F.3d 864, 874 (9th Cir. 2016) (quoting *Terry v. Ohio*, 392 U.S. 1, 20–27 (1968)).

[105] *Id.* (quoting *Terry*, 392 U.S. at 30).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 20 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 20 of 34

not a perfect fit for a *Terry* claim. Although the responding officers presumably pulled up next to Mr. Hassan to investigate whether he was committing or had committed a criminal offense by brandishing his gun near the Walmart parking lot, the officers did not perform any investigation because Mr. Hassan pulled out his gun less than a minute after they arrived.[106]

In any event, to succeed on this claim, Plaintiffs must first establish that a seizure occurred.[107] The Supreme Court has explained that a seizure of a person within the meaning of the Fourth Amendment occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"[108]

It is well established that the use of deadly force to apprehend someone is a seizure subject to the Fourth Amendment; indeed, the shooting of Mr. Hassan forms the basis of the excessive force claim discussed in Section II.[109] For

---

[106] Docket 36, Ex. C-1, Slide 37 (17:52:33.954) (Officer Hall turns on his lights as he pulls up behind Mr. Hassan), Slide 290–Slide 305 (17:52:42.529–17:52:43.030) (Mr. Hassan points his gun at Officer Hall).

[107] *Terry*, 392 U.S. at 16 ("Our first task is to establish at what point in this encounter the Fourth Amendment becomes relevant. That is, we must decide whether and when [the officer] 'seized' [the plaintiff] . . . .").

[108] *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)).

[109] *See, e.g.*, *Garner*, 471 U.S. at 7 ("While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." (internal citation omitted)).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 21 of 34

purposes of this claim, however, Plaintiffs contend that the seizure occurred before the shooting. More specifically, Plaintiffs contend that Mr. Hassan was subject to a seizure when "[h]e was approached by three police cars with at least one having an activated siren and overhead lights" because "[t]he activated siren and lights signaled a show of authority" and Mr. Hassan "submitted to the show of authority."[110]

A seizure does not occur, however "if, in response to a show of authority, the subject does not yield; in that event, the seizure occurs only when the police physically subdue the subject."[111] For example, the Supreme Court held that a police officer did not seize a suspect who was running away from the approaching police officers until the officer tackled the suspect.[112] Similarly, a seizure did not occur in a 20-mile automobile chase until the chase ended in a fatal crash into a police barricade.[113]

In this case, the ICVs show that Mr. Hassan did not submit to the show of authority when three police vehicles pulled up beside him and Officer Hall turned on his lights. To the contrary, he walked toward the officers and drew his gun. The seizure did not occur for Fourth Amendment purposes until Mr. Hassan was shot.

---

[110] Docket 40 at 6–7.

[111] *United States v. Santamaria-Hernandez*, 968 F.2d 980, 983 (9th Cir. 1992) (citing *California v. Hodari D.*, 499 U.S. 621, 625–26 (1991)).

[112] *Id.* at 982–83 (citing *Hodari D.*, 499 U.S. at 625–26)).

[113] *Id.* at 983 (citing *Brower v. Inyo County*, 489 U.S. 593 (1989).

And as discussed above, the responding officers are entitled to qualified immunity for the shooting of Mr. Hassan because no reasonable jury could conclude that the use of deadly force violated Mr. Hassan's constitutional rights. In sum, no reasonable jury could conclude that the responding officers performed an unconstitutional *Terry* stop in violation of Mr. Hassan's Fourth Amendment rights. The Court accordingly grants summary judgment to Municipal Defendants on this claim.

IV.     **Substantive Due Process Claim**

Plaintiffs allege that the responding officers' conduct violated Ahmed Hassan and Bilay Aden Idiris's constitutional rights under the Due Process Clause of the Fourteenth Amendment "to be free from state actions that deprive [them] of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in [their] familial relationship with" Mr. Hassan.[114] Municipal Defendants moved for summary judgment on this claim.[115] Plaintiffs did not address this claim in their opposition or cross motion for summary judgment.[116]

As a preliminary matter, the Ninth Circuit has held that siblings do not have a cognizable liberty interest in the companionship of their sibling.[117] Accordingly,

---

[114] Docket 1 at 17–19, ¶¶ 81–92.

[115] Docket 34 at 20–21.

[116] *See generally* Docket 40.

[117] *Ward v. City of San Jose*, 967 F.2d 280, 283–84 (9th Cir. 1991).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 23 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 23 of 34

Ahmed Hassan may not maintain this claim. The Ninth Circuit does recognize, however, that parents have a cognizable liberty interest in the companionship of their adult children, so Bilay Aden Idiris has stated a plausible claim alleging this constitutional violation.[118]

Official conduct that deprives a parent of their liberty interest in the companionship of their child is cognizable as a violation of due process if that conduct "shocks the conscience."[119]  Because Plaintiffs here have asserted both a Fourth Amendment and Fourteenth Amendment claim with regards to the same conduct, it is helpful to understand how these standards differ.  The Ninth Circuit has explained that "the Fourteenth Amendment standard applicable to a claim by a relative demands more of such a plaintiff than a Fourth Amendment claim by the victim of an officer's actions."[120]  A relative must show "not just that the officers' actions were objectively unreasonable and thus violated [the decedent's] Fourth

---

[118] *Sinclair v. City of Seattle*, 61 F.4th 674, 679 (9th Cir. 2023) ("[T]he Supreme Court has not decided whether parental rights to the companionship of a child retains its constitutional dimension after the child reaches the age of majority . . . . Of the circuits who have expressly considered the question, only the Tenth Circuit has held that the right extends to adult children. . . . Although we have never expressly expounded on the question, we have recognized implicitly that parents maintain a constitutionally protected liberty interest in the companionship of their adult children." (citations omitted)); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014) ("Our decisions recognize that parents have a liberty interest in the companionship of their adult children and have a cause of action under the Fourteenth Amendment when the police kill an adult child without legal justification." (citations omitted)); *Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008) (remanding to the district court to decide whether a police officer's conduct comported with the Fourteenth Amendment where parents alleged that a police officer violated their Fourteenth Amendment due process right to associate with their adult son).

[119] *Porter*, 546 F.3d at 1137.

[120] *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056–57 (9th Cir. 2022) (citing *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 n.4 (9th Cir. 1998), *as amended* (Nov. 24, 1998)).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 24 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 24 of 34

Amendment rights, but that the officers' actions 'shock[ed] the conscience' and thus violated the plaintiffs' Fourteenth Amendment rights."[121]

The Ninth Circuit has warned that "[t]his difference in standards can be dispositive where relatives assert Fourteenth Amendment claims but there is no Fourth Amendment claim."[122] It may well be that if an "[officer's] actions were objectively reasonable, it follows that his conduct did not offend the more stringent standard applicable to substantive due process claims."[123] Nonetheless, the Court will consider whether the officers' conduct shocked the conscience in a manner that would violate Bilay Aden Idiris's Fourteenth Amendment rights.

The analysis of whether the officers' conduct shocked the conscience proceeds in two steps:

> In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation [by the officer] is practical. Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives. For example, a purpose to harm might be found where an officer uses force to bully a suspect or "get even."[124]

---

[121] *Id.* at 1057 (citing *Porter*, 546 F.3d at 1137).

[122] *Id.*

[123] *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 n.4 (9th Cir. 1998).

[124] *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (internal citations and quotation marks omitted).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 25 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 25 of 34

For example, in *Porter v. Osborn*, the Ninth Circuit considered a Fourteenth Amendment familial association claim brought by two parents against a police officer who had killed their adult son when investigating a call about an abandoned car on the side of a highway.[125] When police arrived, they discovered the decedent sleeping in his car and shouted at him to exit the vehicle. When he failed to comply, the officers exited their cars and drew their guns. When the decedent rolled down his window, one of the officers deployed pepper spray at his face. The decedent "reacted in pain and began to drive the car slowly forward toward [the] patrol car, at which point [the officer] fired five shots at [the decedent], killing him."[126] The entire incident occurred over the course of five minutes. The Ninth Circuit concluded that the case presented "an evolving set of circumstances that took place over a short time period necessitating 'fast action' and presenting 'obligations that tend to tug against each other.'"[127] Because the officer "had to react quickly," the Ninth Circuit held that whether the officer's "conduct shock[ed] the conscience must be evaluated under the purpose to harm standard of culpability."[128]

In this case, the responding officers had substantially less time to react. Whereas the altercation in *Porter v. Osborn* lasted five minutes, less than a minute elapsed between the moment when Officer Hall turned on his lights as he pulled

---

[125] *Porter*, 546 F.3d at 1132–33.

[126] *Id.* at 1133.

[127] *Id.* at 1139 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998)).

[128] *Id.* at 1140.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 26 of 34

up behind Mr. Hassan and the moment when Mr. Hassan drew his weapon and pointed it at Officer Hall.[129]  Because the responding officers had to make a "snap judgment" in response to a rapidly "escalating situation," the Court finds that whether the responding officers' conduct shocks the conscience must be evaluated under the purpose to harm standard of culpability.[130]

Pursuant to the purpose to harm standard, Plaintiffs must prove that the responding officers' purpose was "to cause harm unrelated to the legitimate object of arrest."[131]  "Legitimate law enforcement objectives include, among others, arrest, self-protection, and protection of the public."[132]  By contrast, "[a] police officer lacks such legitimate law enforcement objectives when the officer had any ulterior motives for using force against the suspect, such as to bully a suspect or get even, or when an officer uses force against a clearly harmless or subdued suspect."[133]

In this case, the ICVs show that the responding officers did not fire their weapons until Mr. Hassan pointed his gun at Officer Hall.[134]  Plaintiffs have not

---

[129] Docket 36, Ex. C-1, Slide 37 (17:52:33.954) (Officer Hall turns on his lights as he pulls up behind Mr. Hassan), Slide 290–Slide 305 (17:52:42.529–17:52:43.030) (Mr. Hassan points his gun at Officer Hall).

[130] *Torres*, 610 F.3d at 554.

[131] *Lewis*, 523 U.S. at 836.

[132] *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018) (citing *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013)).

[133] *Id.* (internal quotation marks and citations omitted).

[134] Docket 36, Ex. C-1, Slide 290–Slide 305 (17:52:42.529–17:52:43.030) (Mr. Hassan points his gun at Officer Hall), Slide 310 (17:52:43.197) (Mr. Hassan has pointed his gun at Officer Hall and the first shot is fired); *see also* Docket 34-3 at 41 (forensic video analyst concludes "[a]t the

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 27 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 27 of 34

pointed to facts or identified case law that would suggest that the responding officers' decision to shoot Mr. Hassan was motivated by anything other than the legitimate use of force necessary to protect the public and themselves. Nor are there facts in the record showing that the responding officers acted with the purpose to cause harm. No reasonable jury could conclude otherwise. The Court accordingly grants summary judgment to Municipal Defendants on Bilay Aden Idiris's Fourteenth Amendment claim.[135]

## V. *Monell* Claims Against the Municipality of Anchorage

Plaintiffs contend that the Municipality is subject to liability pursuant to 42 U.S.C. § 1983 for maintaining an unconstitutional official custom or policy and for failure to train.[136] To establish liability on the basis of an unconstitutional custom or policy, Plaintiffs must prove that (1) Mr. Hassan was deprived of a constitutional right; (2) the Municipality had a policy; (3) the policy amounted to deliberate indifference to Mr. Hassan's constitutional right; and (4) the policy was the moving force behind the constitutional violation.[137] And to successfully allege a claim on the basis of failure to train, Plaintiffs must show that (1) Mr. Hassan was deprived

---

time of the first shot, Hassan was holding his gun directly toward Hall, with his gun hand outstretched and the muzzle directed toward Hall").

[135] The Court also grants summary judgment to the Municipality on Ahmed Hassan's Fourteenth Amendment claim because, as discussed above, the Ninth Circuit has held that siblings do not have a cognizable liberty interest in the companionship of their sibling. *Ward*, 967 F.2d at 283–84.

[136] Docket 1 at 19–25, ¶¶ 93–115.

[137] *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 28 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 28 of 34

of a constitutional right; (2) the Municipality's training policy amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact; and (3) the constitutional injury would have been avoided had the Municipality properly trained those officers.[138] To prevail on either claim, Plaintiffs must show that Mr. Hassan was deprived of his constitutional rights. In this case, however, the Court has concluded that no reasonable jury could find that such a constitutional violation occurred. And as the Ninth Circuit explained in *Scott v. Henrich*, "[w]hile the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights."[139] Because Plaintiffs have failed to show an underlying constitutional violation, there can be no municipal liability in this case.[140] For this reason, the Court grants summary judgment to the Municipality on both *Monell* claims.

## VI. State Law Claims

The complaint alleges state law claims against Municipal Defendants for false arrest, battery, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress of Mr. Hassan and Ahmed Hassan.[141]

---

[138] *Blakenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *Lee v. City of Los Angles*, 250 F.3d 668, 681 (9th Cir. 2001)).

[139] 39 F.3d 912, 916 (9th Cir. 1994).

[140] *Id.* ("Here, the municipal defendants cannot be held liable because no constitutional violation occurred."); *see also Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims thus require a plaintiff to show an underlying constitutional violation.").

[141] Docket 1 at 25–37, ¶¶ 116–155.

With summary judgment granted on Plaintiffs' federal claims, over which the Court has original jurisdiction, the Court must now consider whether to exercise its discretion to retain supplemental jurisdiction over the remaining state law claims.

Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." The Supreme Court provides that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law" such that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."[142] And the Ninth Circuit explains further that "[w]hen . . . the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice."[143]

For example, in *Gini v. Las Vegas Metropolitan Police Department*, the district court dismissed a plaintiff's federal civil rights claims brought pursuant to 42 U.S.C. §§ 1983–86 for failure to state a claim and dismissed the pendent state

---

[142] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (footnotes omitted); *see also Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) ("[I]n the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." (alterations and emphasis in original) (citations omitted)).

[143] *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (alterations in original) (quoting *Les Shockley Racing v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989)); *see also Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) ("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court." (citation omitted)).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 30 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 30 of 34

law claims pursuant to the Supreme Court's decision in *United Mine Workers of America v. Gibbs*.[144]  The Ninth Circuit held that the pendent state law claims were properly dismissed because, when federal law claims are eliminated before trial, the "balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims" in the "usual case."[145]  However, the district court's order did not clarify whether dismissal was with or without prejudice, so the Ninth Circuit "vacat[ed] the judgment with instructions that it be modified to make clear that dismissal of the pendent claims is without prejudice."[146]

In this case, because the Court has granted summary judgment on all of Plaintiffs' federal claims based on qualified immunity, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims and will instead dismiss them without prejudice.  Declining to exercise jurisdiction over the state law claims is particularly appropriate in this case because Ahmed Hassan's claims are, in many respects, factually distinct from the federal claims.[147]

## VII.   Motion to Compel Discovery

Plaintiffs filed a motion to compel Municipal Defendants to comply with Plaintiffs' discovery requests at Docket 47.  Plaintiffs contend that "[t]his motion is

---

[144] 40 F.3d at 1043.

[145] *Id*. at 1046 (alteration in original) (emphasis omitted) (citations omitted).

[146] *Id*.

[147] For example, the false arrest/false imprisonment claim arises out of the interaction between Ahmed Hassan and the responding officers after Mr. Hassan had been shot.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al*.
Order Re All Pending Motions
Page 31 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 31 of 34

necessary because Defendants provided evasive answers which under Civil Procedure Rule 37(a)(4) is equivalent to a failure to disclose, answer or respond to plaintiffs' discovery request."[148]   In response, Municipal Defendants filed a motion to strike the motion to compel discovery as untimely.[149]  Because the Court has granted summary judgment for the Municipal Defendants on all federal claims and declined to exercise jurisdiction over the state law claims, there are no remaining claims for which to pursue discovery.  Accordingly, the Court denies Plaintiffs' discovery motion as moot.

In any event, Plaintiffs have not shown that the information sought would preclude the grant of summary judgment for Municipal Defendants in this case.[150]  Federal Rule of Civil Procedure 26(b)(1) requires that the documents sought pursuant to discovery are "relevant" to the dispositive issue.[151]  Plaintiffs' discovery motion seeks "training records, if any, on how to respond to calls involving an armed suspect or a person suspected of being mentally ill and armed."[152]  Such evidence could support a *Monell* claim against the Municipality of Anchorage

---

[148] Docket 47 at 1.

[149] Docket 48 at 1.

[150] *See, e.g.*, *Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1518–19 (9th Cir. 1987) (holding that district court erred in granting summary judgment and denying motion to compel discovery as moot because discovery motion "made clear the information sought, did not seek broad additional discovery," "was timely made under the scheduling order," and sought "precisely the type of evidence" that would defeat summary judgment); *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988) ("To determine whether discovery would have been fruitless, we look to the legal theories that might sustain the [plaintiff's] claims.").

[151] *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 677 (9th Cir. 2018).

[152] Docket 47 at 2.

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 32 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 32 of 34

pursuant to 42 U.S.C. § 1983 for maintaining an unconstitutional official custom or policy and for failure to train. But as discussed Section V, to bring a successful *Monell* claim, Plaintiffs must show that a reasonable jury could find that the responding officers violated Plaintiffs' federal constitutional rights.[153] And as explained in Sections II, III, and IV, Plaintiffs have not shown that a reasonable jury could conclude that the responding officers violated either the Fourth or Fourteenth Amendments to the United States Constitution. Further discovery with respect to training records is not relevant to whether Plaintiffs suffered an underlying violation of their federal constitutional rights. The motion to compel could be denied on this alternative basis.[154]

In sum, the Court denies Plaintiffs' motion to compel as moot. Because the Court has denied the motion to compel, Municipal Defendants' motion to strike the motion to compel is denied as moot.

## CONCLUSION

In light of the forgoing, it is ordered that:

- Municipal Defendants' *Motion for Summary Judgment* at Docket 34 is GRANTED such that:

---

[153] *Dougherty*, 654 F.3d at 900 (elements of a *Monell* claim for maintenance of unconstitutional official custom or policy); *Blakenhorn*, 485 F.3d at 484 (elements of a *Monell* claim for failure to train).

[154] *See Corelogic, Inc.*, 899 F.3d at 676–78 (affirming district court's grant of summary judgment to the defendant "before ruling on the motion to compel, and then, in the summary judgment order, den[ying] the discovery motion as moot" because the plaintiffs did not make the requisite showing that the requested documents were relevant to the dispositive question).

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 33 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 33 of 34

- Summary judgment is GRANTED with respect to the federal claims (Counts I, II, III, IV, and V),

- All remaining state law claims (Counts VI, VII, VIII, IX, X, and XI) are DISMISSED without prejudice because this Court declines to exercise supplemental jurisdiction over those claims;

- Plaintiffs' *Cross Motion for Summary Judgment* at Docket 40 is DENIED;

- Municipal Defendants' *Motion to Strike Cross Motion for Summary Judgment* at Docket 42 is DENIED;

- Plaintiffs' *Motion to Compel Defendants to Produce Discovery* at Docket 47 is DENIED as moot; and

- Municipal Defendants' *Motion to Strike Plaintiffs' Untimely Motion to Compel* at Docket 48 is DENIED as moot.

The Clerk of Court shall enter a final judgment accordingly.

DATED this 9th day of May 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:21-cv-00076-SLG, *Hassan, et al. v. Municipality and City of Anchorage, et al.*
Order Re All Pending Motions
Page 34 of 34

Case 3:21-cv-00076-SLG   Document 52   Filed 05/09/23   Page 34 of 34